**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DEREK CARRIER and DORA CARRIER, individually, and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> RAVI ZACHARIAS INTERNATIONAL MINISTRIES, INC., a 501(c)(3) Corporation; RZIM PRODUCTIONS, INC., a Georgia Non-Profit Corporation; MARGARET ZACHARIAS, in her Capacity as ADMINISTRATOR OF THE ESTATE OF RAVI KUMAR ZACHARIAS, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Derek Carrier and Dora Carrier ("Plaintiffs"), on their own behalf and on behalf of all others similarly situated ("Class Members"), bring this class action against Ravi Zacharias International Ministries, Inc., RZIM Productions, Inc. (together, "RZIM"), and Margaret Zacharias, in her capacity as the Administrator of the Estate of Ravi Kumar Zacharias ("Estate") (collectively

1

"Defendants") and complain and allege the following upon personal knowledge as to their own experiences, and based upon on information and belief as to other matters:

## INTRODUCTION

1.      This is a class action lawsuit brought against Defendants by Plaintiffs on behalf of themselves and similarly situated donors and consumers who donated funds to Defendants to support Defendants' Christian apologetic ministry, outreach, training, and other programming.

2.      Since at least 2004, RZIM, led by Zacharias, has deceived faithful Christians, soliciting their financial support for its purported mission of Christian evangelism, apologetic defense of Christianity, and humanitarian efforts. Defendants bilked tens—if not hundreds—of millions of dollars from well-meaning donors who believed RZIM and Zacharias to be faith-filled Christian leaders. In fact, Zacharias was a prolific sexual predator who used his ministry and RZIM funds to perpetrate sexual and spiritual abuse against women.

3.      Defendants, through conferences, seminars, and audio programming, consistently and uniformly promised prospective donors that their charitable contributions would support RZIM's stated mission, which includes spreading the Gospel of Jesus Christ and training disciples to defend Christianity around the

2

globe. Instead, donated funds both supported an organization led by a sexual predator and financed Zacharias' sexual misconduct, including, but not limited to, financing massage spas where Zacharias engaged in sexually predatory behavior and paying hush money to the targets of his sex abuse.

4.       As a result of Defendants' consistent and uniform misleading and deceitful acts, financial donors, including Plaintiffs and putative Class Members, have suffered an ascertainable loss, injury in fact, and have otherwise suffered harm based on Defendants' conduct.

5.       Accordingly, Plaintiffs bring this action, on behalf of themselves and the Class, to seek redress. Plaintiffs seek monetary relief for damages suffered, costs of suit, including reasonable attorney fees, and public injunctive relief.[1]

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal

---

[1] Concurrent with the filing of this Complaint, Plaintiffs have provided a notice and demand related to their intended claims against Defendants for violations of the Fair Business Practices Act, O.C.G.A. §§ 10-1-390, *et seq.*, pursuant to O.C.G.A. § 10-1-399.

diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the conduct described in this Complaint was carried out in this district. Furthermore, RZIM is headquartered and has a principal place of business in this district, decedent Ravi Kumar Zacharias resided and was domiciled in this district, and his Estate is being Administered in the Probate Court of Fulton County Georgia, in this district, subjecting Defendants to personal jurisdiction in this district.

8.     Venue is also proper in this judicial district pursuant to O.C.G.A. § 43-17-15 because RZIM has its principal place of business in this district, and based on information and belief, violations of the Charitable Solicitations Act occurred in this district.

9.     The Court may exercise personal jurisdiction over Defendants because they maintain headquarters within this judicial district, are registered to conduct business in this judicial district, have designated an agent for service of process in this judicial district, have employees located in this judicial district, list their addresses as within this judicial district, the Estate is being administered in this

district, and Defendants intentionally and purposefully conduct services within the state of Georgia and throughout the United States. The exercise of personal jurisdiction over Defendants in Georgia would not offend traditional notions of fair play and substantial justice.

### THE PARTIES

10. Plaintiffs Derek Carrier and Dora Carrier are citizens of the state of Nevada.

11. On January 21, 2020, Plaintiffs contributed $30,000 to RZIM.

12. According to the Georgia Secretary of State, Corporations Division, Defendant Ravi Zacharias International Ministries, Inc. is a 501(c)(3) corporation with its principal place of business at 3755 Mansell Road, Alpharetta, GA 30022. It can be served via its Registered Agent, Jonathan T. McCants, at 3414 Peachtree Road, Ste. 1150, Atlanta (Fulton County), Georgia 30326.

13. According to the Georgia Secretary of State, Corporations Division, Defendant RZIM Productions, Inc. is a Georgia non-profit corporation with its principal place of business at 3755 Mansell Road, Alpharetta, GA 30022. Its registered purposes include "serving the needs and interests of, performing certain functions of, and otherwise carrying out the purposes of and advancing and perpetuating the ministry and missions of Ravi Zacharias International Ministries,

Inc., as well as making distributions to or for the use of organizations exempt at the time under Section 501(c)(3) of the Code." RZIM Productions, Inc. can be served via its Registered Agent, Jonathan T. McCants, at 3414 Peachtree Road, Ste. 1150, Atlanta (Fulton County), Georgia 30326.

14.    Plaintiffs are informed and believe that the decedent Ravi Zacharias ("Zacharias"), was a citizen of the State of Georgia and resided in the city of Alpharetta, Fulton County Georgia. Margaret Reynolds Zacharias, Zacharias' wife, is the Administrator of his Estate, which Estate is being administered in the Probate Court of Fulton County, Georgia.  Margaret Zacharias is sued in her capacity as the Administrator of the Estate of Ravi Kumar Zacharias.

## FACTUAL ALLEGATIONS

### Christian Apologetics

15.    Christian apologetics are devoted to the mission of defending the message and faith of Christianity, through presenting either evidence or "a more philosophical and propositional approach."[2] Christian apologetics' "function is both to fortify the believer against personal doubts and to remove the intellectual

---

[2] Jerry Root, *What Are Christian Apologetics, and How Do They Relate to the Gospel Anyways?*, CHRISTIANITY TODAY, (June 14, 2018) https://www.christianitytoday.com/edstetzer/2018/june/what-are-christian-apologetics-and-how-do-they-relate-to-go.html.

stumbling blocks that inhibit the conversion of unbelievers."[3] "Apologetics is quite

literally defense of the faith[.] Apologetics helps others develop an intellectual and

reasonable examination of the Christian faith."[4]

### Ravi Zacharias and RZIM

16.     Ravi Zacharias founded RZIM in 1984.[5] RZIM's reported mission is

"to support, expand, and enhance the preaching and teaching ministry of Ravi

Zacharias, distinctive in its strong evangelistic and apologetic foundation, intended

to touch both the heart and the intellect of the thinkers and opinion-makers of

society with the Truth of the Gospel of Jesus Christ."[6]

17.     Defendants held themselves out to be Christian apologetics charged

with defending Christianity. Defendants further held themselves out to be pious

followers of the Holy Gospel, maintaining a religious level of morality and

following the teachings of Jesus Christ. Zacharias explicitly presented himself as a

---

[3] *Apologetics: Christianity*, BRITANNICA,
https://www.britannica.com/topic/apologetics (last visited July 9, 2021).
[4] Jeff Augustine, *Apologetics v. Evangelicalism: Is There A Difference?*,
COLORADO CHRISTIAN U. ADULT & GRADUATE STUD. BLOG, (April 29, 2020),
https://www.ccu.edu/blogs/cags/2020/04/apologetics-vs-evangelism/.
[5] *Ravi Zacharias Int'l Ministries/RZIM*, MINISTRY WATCH: EMPOWERING DONORS
TO CHRISTIAN MINISTRIES,
https://briinstitute.com/mw/ministry.php?ein=133200719 (last visited July 9,
2021).
[6] *Id.*

devoted Christian who was living a Christian lifestyle in keeping with the Gospel of Jesus Christ and who was worthy of leading others in their Christian faith.

18.     RZIM reported more than $26 million in gross receipts in 2014,[7] which is the last year RZIM publicized its IRS Form 990.[8]

19.     RZIM indicated that its "vision [. . .] is to build a team with a fivefold thrust of evangelism, apologetics, spiritual disciplines, training, and humanitarian support . . . ."[9] RZIM worked toward this vision through conferences, lectures, and seminars held around the world.[10] RZIM also conducted its outreach through a weekly podcast program titled "Let My People Think" and a daily, 15-minute audio program called "Just Thinking" available on radio, satellite, and the Internet.[11]

---

[7] Form 990, Ravi Zacharias Int'l Ministry, https://990s.foundationcenter.org/990_pdf_archive/133/133200719/133200719_201509_990.pdf (last visited July 9, 2021).
[8] Warren Cole Smith, *The Way Back for Ravi Zacharias International Ministries*, MINISTRY WATCH: EMPOWERING DONORS TO CHRISTIAN MINISTRIES, ( Jan. 12, 2021), https://ministrywatch.com/the-way-back-for-ravi-zacharias-international-ministries/ (last visited July 9, 2021).
[9] *Id*.
[10] Ravi Zacharias Int'l Ministries, open990, https://www.open990.org/org/133200719/ravi-zacharias-international-ministries/ (last visited July 9, 2021).
[11] *Id*.

20.    The RZIM "Let My People Think" podcast features Zacharias, who preaches the teachings of RZIM, advertises the RZIM programs that train people to continue RZIM's mission of defending Christianity, and urges listeners to make monetary donations to RZIM. The RZIM podcast states that RZIM and its podcast are entirely donor-supported.

21.    Zacharias dedicated the November 30, 2019 episode of the RZIM "Let My People Think" podcast to the "Celebration of Generosity Conference." Zacharias noted that "traveling around the globe with 93 other speakers costs a lot of money," telling listeners that "this is where you come into it with your prayers, to uphold us, and with your giving," revealing "a tall goal of $300,000" for Giving Tuesday and stating that "if you seek the mind of the Lord and ask Him what he will have you give, I am sure we can meet that goal."[12] The podcast implored listeners to give to RZIM now because "without givers like you, our Ministry would not be able to continue reaching those around the globe with the Gospel," explaining that RZIM needs donations to "to equip Christians and to provide thoughtful answers to difficult questions" in  cities, corporations, campuses, and

---

[12] Ravi Zacharias, *Generous Giving, Part 1*, RZIM: LET MY PEOPLE THINK BROADCASTS, 01:16–01:38, (Nov. 30, 2019), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/generous-giving-part-1-48828363.

churches.[13]

22.    In the second part of that podcast, dated December 7, 2019, Zacharias

asks for donations:

> [A]s we come to the end of the calendar year, and begin a
> new one, we really need your prayers. We really need your
> support. I'm asking this on behalf of our entire speaking
> team: 93 speakers in 15 countries and hundreds fulltime
> behind the scenes. Please ask the Lord what he would have
> you do. We need your help. We need your prayers.  We'll
> do this together.[14]

The podcast asks listeners: "Every moment of our lives is filled with meaning and

purpose, but do you know what God's purpose is for your life? And how are you

giving back to God?"[15] Zacharias goes on to describe having "71 apologists placed

in 15 different countries" and promises that "as long as there is breath in [his]

body," he will continue to "train apologists for the future"[16] The podcast ultimately

asks listeners to consider donating to RZIM at the end of the fiscal year and thanks

them for their "prayers and financial support."[17]

---

[13] *Id.* at 24:50–25:14.

[14] Ravi Zacharias, *Generous Giving, Part I1*, RZIM: LET MY PEOPLE THINK
BROADCASTS, 01:06–01:29, (Dec. 7, 2019),
https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-
216340/episodes/generous-giving-part-2-49179087

[15] *Id.* at 01:55–02:04.

[16] *Id.* at 18:26–18:33, 18:44–18:50.

[17] *Id.* at 25:58–26:11.

23.     After years of listening to the RZIM podcast and hearing the uniform messages of Zacharias's strong Christian leadership and RZIM's mission, Plaintiffs Dora and Derek Carrier felt moved by RZIM's purported success in developing and training proper apologetics and leading thousands of people to place their faith in Jesus Christ. In late 2019 and early 2020, Plaintiffs carefully and prayerfully considered which ministries would receive their yearly tithe, or a portion thereof, and they readily accepted the call to provide financial support to Zacharias and RZIM.

**Zacharias's Sexual Misconduct**

24.     Zacharias, however, was not who he claimed to be. Since at least as far back as October 2014, Zacharias was, in fact, a serial sexual and spiritual predator and a prolific sex offender.

25.     Zacharias was also an investor in two health spas starting in 2004: Touch of Eden and Jivian Wellness.[18] Both were located at the same address in Alpharetta, GA, operating first under the name Touch of Eden, and then as Jivian

---

[18] Lynsey M. Barron & William P. Eiselstein, Miller & Martin PLLC, Report of Independent Investigation into Sexual Misconduct of Ravi Zacharias (Feb. 9, 2021) https://s3-us-west-2.amazonaws.com/rzimmedia.rzim.org/assets/downloads/Report-of-Investigation.pdf, attached hereto as Exhibit 1.

Wellness when Touch of Eden ceased to exist.[19] Zacharias was well-known to frequent these spas for massage therapy. Nearly two dozen therapists at these spas reported inappropriate, sexual behavior by Zacharias during these massages, including nudity, maintaining an erection, asking therapists to touch his genitals, and groping.[20] One witness reported "details of many encounters over a period of years that she described as rape."[21] Like with other sexual abuse survivors, Zacharias provided this witness with financial support, elicited "personal information about a difficult past," and used "religious language during their encounters."[22]

26.     Zacharias would demand sex from women after providing for their financial needs, sometimes using "religious expressions to gain compliance."[23] Zacharias would reference "'godly' men in the Bible with more than one wife," preying on the spiritual faith and vulnerabilities he fostered with women he subjected to sexual abuse, throughout the course of his abuse of them.[24] Zacharias groomed the women he preyed upon, learning about their personal lives, struggles,

---

[19] *Id.*
[20] *Id.* at 4.
[21] *Id.*
[22] *Id.* at 5.
[23] *Id.*
[24] *Id.*

and vulnerabilities after gaining their trust as their "spiritual guide, confidante, and notable Christian statesman."[25]

27.     In 2017, Lori Anne Thompson brought allegations of sexual misconduct against Zacharias directly to RZIM leadership and/or Board of Directors, reporting inappropriate communications and interactions to which Zacharias subjected her.[26] Thompson revealed sexually explicit, online conversations she had with Zacharias and Zacharias's requests for indecent photos of her.

28.     Zacharias claimed innocence and threatened to leave RZIM; in turn, RZIM steadfastly defended Zacharias and did not investigate Thompson's allegations.[27] Based on information and belief, RZIM defended Zacharias against Thompson's allegations despite having been provided with "a notebook of evidence."[28] RZIM's actions and failure to respond appropriately to reports of Zacharias's sexual misconduct furthered the public deception that Zacharias was a faith-filled, moral, and upstanding Christian leader. RZIM's acts and omissions

---

[25] *Id*. at 5, 7.
[26] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021).
[27] *Id*.
[28] *Id*.

further allowed Zacharias to continue sexually abusing women under the cover of Christian ministry and permitted Zacharias's ongoing, deceptive fundraising efforts for RZIM.

29.     It was during this time of RZIM's continued defense and support of Zacharias and Zacharias's continued leadership of RZIM that Plaintiffs made their monetary contribution to RZIM in support of its professed Christian apologetic mission.

30.     Zacharias died on May 19, 2020,[29] before additional allegations of prolific sexual misconduct by Zacharias came to light.

31.     *Christianity Today* published an article on September 29, 2020, revealing sexual misconduct allegations by three women.[30]

32.     It was not until after the publication of the September 2020 *Christianity Today* article that RZIM finally enlisted a firm, Miller & Martin PLLC ("M&M"), to investigate the sexual assault allegations and other allegations of sexual misconduct levied against Zacharias. M&M issued a report of its findings

---

[29] Daniel Silliman, *Ravi Zacharias Dies of Cancer*, CHRISTIANITY TODAY, (May 19, 2020, 7:00 AM), https://www.christianitytoday.com/news/2020/may/ravi-zacharias-death-cancer-rzim-apologist.html.

[30] Daniel Silliman, *Ravi Zacharias's Ministry Investigates Claims of Sexual Misconduct at Spas*, CHRISTIANITY TODAY, (Sept. 29, 2020, 9:50 AM), https://www.christianitytoday.com/news/2020/september/ravi-zacharias-sexual-harassment-rzim-spa-massage-investiga.html.

("M&M Report"), and RZIM published that report, on or about February 9, 2021.[31] M&M had the benefit of access to several of Zacharias's mobile phone devices and a laptop to help inform its investigation.[32]

33.    The independent investigation revealed, and the report states, that some women did not come forward with their allegations earlier because they were afraid no one would believe them, especially because Zacharias was such a "prominent Christian leader."[33]

34.    In addition, RZIM funds were funneled to women subjected to Zacharias's sexual misconduct. Zacharias provided money to these survivors, gave them large tips following massages, and showered them with expensive gifts.[34] In one instance, Zacharias paid $40,000 for a sexual abuse survivor's culinary schooling. In addition, Zacharias traveled with a personal massage therapist, whom RZIM paid. "On paper, her job title reflected other responsibilities, but it appears that her primary job was to massage Mr. Zacharias."[35] Monthly financial support was also funneled through Touch of Hope.[36] Touch of Hope was a discretionary

---

[31] Exhibit 1 at 1.
[32] *Id*. at 2.
[33] *Id*. at 5.
[34] *Id*.
[35] *Id*.
[36] *Id.*

fund that RZIM earmarked as a "humanitarian effort," but a significant portion of its wire payments were made to "or for the benefit of" four women who were, at some point, Zacharias's massage therapists.[37]

35.     RZIM acknowledges its "failures in 2017, including [its] failure to commission an independent investigation at that time, allow[ing] tremendous pain to continue[.]"[38] RZIM further acknowledges that it defended Zacharias against accusations of sexual misconduct and that its defense of Zacharias was wrong, caused others to believe his denials of serious accusations because of the trust those people placed in RZIM, and made it more difficult for survivors to come forward with their truthful accounts of assault and harassment.[39]

36.     Zacharias's heinous acts as a sexual predator are diametrically opposed to the morality he espoused in his sermons and other public speaking engagements, are diametrically opposed to the teachings of Christianity, and are abhorred by Christian apologetics, of which he claimed to be a member and spiritual leader. RZIM, itself, has acknowledged that its founder's sexual misconduct and RZIM's initial response to early allegations were not aligned with

---

[37] *Id.*

[38] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021).

[39] *Id.*

what RZIM held itself out to be.

37.     In a recorded statement posted online, RZIM's CEO Sarah Davis (who is also Zacharias's daughter) states that Zacharias was "not living up to the truth of what God is," and, "[w]hile we were proclaiming a God who loves and values every person, our leader was not living into truth, and to the truth of who God is."[40] Davis addresses survivors of Zacharias's sex abuse, stating, "Each one of you was created by God with purpose, with dignity, and intrinsic value, and any way that you have been treated otherwise is a direct violation of God's purpose for you."[41] Davis also addresses RZIM supporters, acknowledging and apologizing for the "betrayal," and she admits, "We have not represented Christ to [the public]."[42]

## CLASS ACTION ALLEGATIONS

38.     This action is brought, and my properly proceed, as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. This action may also proceed as a class action pursuant to O.C.G.A. §§ 9-11-23(b)(1) and 9-11-23(b)(3).

---

[40] A Word from CEO Sarah Davis, RZIM, https://www.rzim.org/watch/rzim-updates/a-word-from-ceo-sarah-davis (last visited July 9, 2021).
[41] *Id*.
[42] *Id*.

39.     Plaintiffs bring this action on behalf of a Nationwide Class, defined as follows:

> **All persons in the United States who made donations having monetary value to Ravi Zacharias and/or the Ravi Zacharias International Ministry from 2004 through February 9, 2021.**

40.     Excluded from the Class are Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definition if discovery and/or further investigation reveal that it should be expanded or otherwise modified.

41.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown to Plaintiffs at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that at least thousands of people have made monetary contributions to Defendants over the class period. As stated above, RZIM's gross receipts totaled more than $26 million in 2014, alone, and RZIM states that it is completely reliant on donor funding.

42.     **Predominance**: Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions

affecting individual Class Members, and they include, but are not limited to, the following:

a) Whether Defendants engaged in the conduct alleged herein;

b) Whether Zacharias engaged in wrongful conduct while he was the spiritual leader of RZIM;

c) Whether Zacharias was a corporate officer of RZIM while he engaged in the wrongful conduct asserted herein;

d) Whether Zacharias misused funds donated to RZIM;

e) Whether and when RZIM knew, or should have known, about Zacharias's wrongful conduct;

f) Whether RZIM knew or should have known that donations to RZIM were being used to further Zacharias's sexual misconduct;

g) Whether RZIM knew, or should have known, that its wrongful conduct would cause substantial harm to Plaintiffs and Class Members;

h) Whether RZIM derived a benefit from any of Zacharias's wrongful conduct;

i) Whether RZIM acquiesced in any of Zacharias's wrongful conduct;

19

j)  Whether RZIM failed to investigate reports of Zacharias's wrongful conduct;

k)  Whether Defendants engaged in unfair or deceptive business practices as asserted herein;

l)  Whether Defendants' conduct alleged herein violates applicable statutes and other laws asserted herein;

m) Whether Defendants have been unjustly enriched as a result of the wrongful conduct asserted herein;

n)  Whether Plaintiffs and Class Members suffered an ascertainable loss as a result of Defendants' wrongful conduct;

o)  Whether Plaintiffs and Class Members are entitled to damages as a result of Defendants' wrongful conduct, and if so, the amount and proper measure of those damages; and

p)  Whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to injunctive relief, including public injunctive relief as provided for pursuant to Georgia law.

43.  **Typicality:** Plaintiffs' claims are typical of the claims of the Class, as Plaintiffs made a financial contribution to Defendants while funds were being used for purposes completely unrelated to Defendants' stated mission and purpose and

20

while Defendants held themselves out to be proper Christians holding and living Christian values, as did each member of the Class. Plaintiffs and Class Members were injured in the same manner by Defendants' uniform course of conduct alleged herein. Plaintiffs and Class Members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief give rise to the claims of all Class Members. Plaintiffs and Class Members sustained monetary and economic injuries, including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in taking Plaintiffs' and Class Members' monies under the guise of being a Christian apologetic ministry completely dedicated to "evangelism, apologetics, spiritual disciplines, training, and humanitarian support." Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

44.    **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests align with and do not conflict with the interests of the Class they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation—including consumer protection class action cases—and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

21

45.    **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of Plaintiffs and Class members' claims. The injury that each, individual Class member has suffered is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation that Defendants' conduct necessitates. It would be virtually impossible for members of the Class to redress, individually and effectively, the wrongs Defendants have done to them. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, given the complex legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Class Members can be readily ascertained and notified.

46.    Defendants have acted, and refuse to act, on grounds generally applicable to the Class, thereby making final equitable and injunctive relief appropriate with respect to the Class as a whole.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Georgia Charitable Solicitations Act, O.C.G.A. §§ 43-17-1, *et seq*.**

**(On Behalf of Plaintiffs and the Class)**

47.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 46 of this complaint as though fully set forth herein.

48.     RZIM is a "Religious Organization" within the meaning of the Georgia Charitable Solicitations Act.

49.     Based on information and belief, Zacharias was a bona fide officer and employee of RZIM.

50.     Defendants engage in the "solicitation of funds" to the public within the meaning of the Georgia Charitable Solicitations Act.

51.     Defendants directly, or indirectly, operated a scheme to deceive the public to solicit funds for their personal and business purposes. Defendants knowingly and intentionally engaged in these deceptive practices.

52.     Defendants operated a fraud on Plaintiffs, the putative Class, and the public with each acting to hide the true nature of RZIM and its leader, Zacharias. Defendants affirmatively misrepresented that funds donated to RZIM were to

23

support its purported mission of Christian evangelism, apologetic defense of

Christianity, and humanitarian efforts, when such funds were used to support and

hide Zacharias's sexual abuse. Defendants further misrepresented that they were

faith-filled Christians of upstanding moral character. Thus, Defendants' misleading

solicitations constitute deceptive acts and practices.

53.     Defendants' uniform deceptive practices were fundamental to their

business model because the public, including Plaintiffs and Class Members, would

not donate money to an organization led by a sexual predator that spends funds

solicited for non-profit, Christian apologetics purposes instead to perpetrate and

provide cover for sex abuse. Plaintiffs and Class Members would not have donated

money to Defendants had they known the truth about Zacharias's sexual

misconduct and the improper use of donated funds.

54.     O.C.G.A. § 43-17-12(d) makes it:

[U]nlawful for any person in connection with the planning, conduct, or
execution of any charitable solicitation or charitable sales promotion,
directly or indirectly:

(1)  To employ a device, scheme, or artifice to defraud;

(2)  To engage in an act, practice, or course of business that
operates or would operate as a fraud or deceit upon a
person;

(3) To misrepresent or mislead anyone in any manner to believe that the person on whose behalf a solicitation or charitable sales promotion is being conducted is a charitable organization or that the proceeds of such solicitation or charitable sales promotion will be used for charitable purposes if such is not the fact; or

(4) To misappropriate, convert, illegally withhold, or fail to account for any charitable contributions solicited by, or on behalf of, any charitable organization . . . .

55.   Further, per O.C.G.A. § 43-17-14(a):

Any person who suffers injury or damages as a result of acts or practices in violation of this chapter may bring an action against the charitable organization or paid solicitor engaged in such acts or practices. The person may recover such general damages sustained as a result of such acts or practices. Exemplary damages and attorney's fees may be awarded in cases of intentional violations of this chapter.

56.   And "[a]ny person entitled to bring an action under this chapter may institute a class action . . . for the recovery of damages. O.C.G.A. § 43-17-14(b).

57.   Defendants' deceptive acts and practices occurred in their trade or business and have proximately caused injury to Plaintiffs and Class Members. Defendants' solicitations are "deemed to be a consumer act or practice or consumer transaction under . . . [Georgia's] Fair Business Practices Act . . . ." O.C.G.A. § 43-17-19.

58.   Defendants' general course of conduct is injurious to the public interest. Defendants' acts are ongoing as Defendants continue to spend money

25

received through their deceptive practices, meaning that the harmful effects of Defendants' acts and/or omissions are repeated, widespread, and expected to last for years into the future.

59.    By their acts and/or omissions as alleged herein, Defendants are forcing Plaintiffs to institute this action.

60.    As a direct, proximate, and legal result of Defendants' deceptive and unfair acts and practices, Plaintiffs and Class Members have been, and continue to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to the value of their monetary contributions, and other fees, expenses, and costs to be proven at trial.

61.    Plaintiffs have also sustained other economic losses as a direct, proximate, and legal result of Defendants' conduct, in an amount to be proven at trial.

62.    Accordingly, Plaintiffs, on behalf of themselves and Class Members, seek to enjoin Defendants' unfair and/or deceptive acts or practices and recover general damages in an amount to be proven at trial, together with the costs of bringing this suit, including reasonable attorney fees.

## COUNT II

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

63.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 46 of this complaint as though fully set forth herein.

64.    Defendants received payments in the form of charitable contributions from Plaintiffs and Class Members, having induced them to fund Defendants' purported Christian apologetic evangelism, training, and humanitarian efforts. Defendants failed to use the funds for these purposes, diverting funds to massage parlors and as financial support to survivors of Zacharias's sex abuse.

65.    Plaintiffs and Class Members conferred financial benefits on Defendants that they would not have provided had Defendants truthfully represented that they were engaged in heinous, wrongful conduct and would use those financial benefits for their own, wrongful purposes, including Defendant Zacharias's sexual misconduct.

66.    Defendants retained and continue to retain the benefit of payments made by Plaintiffs and Class Members under circumstances which render that retention inequitable and unjust without paying for their value. Under these circumstances, it would be against equity and good conscience to permit

27

Defendants to retain the ill-gotten benefits they received from Plaintiffs and Class Members.

67.   Defendants have knowledge of said benefits.

68.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class Members are entitled to restitution, restitutionary disgorgement, and damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class Members, respectfully request the following and pray for judgment as follows:

1.   Certification of this case as a class action on behalf of Plaintiffs and the Class as defined above, appointment of Plaintiffs as representatives of the Class, and appointment of the undersigned attorneys as Class Counsel;

2.   A declaration that Defendants misrepresented the true nature of their ministry and the use of funds donated in support of their stated purpose;

3.   For appropriate declaratory relief;

4.   For appropriate injunctive relief;

5.   For general, compensatory damages, according to proof;

28

6.    For special and consequential damages;

7.    For civil penalties, according to law;

8.    For prejudgment and post-judgment interest, as allowed by law;

9.    For attorney fees, witness fees, and costs of litigation Plaintiffs incur, according to proof;

10.    For punitive and exemplary damages, where applicable, according to proof to be determined at trial;

11.    For costs of suit herein; and

12.    For such other and further relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

Dated: August 4, 2021

By:   */s/ Michael L. McGlamry*
        Michael L. McGlamry
        Georgia Bar No. 492515
        **POPE MCGLAMRY, PC**
        3391 Peachtree Road, Suite 300
        PO Box 19337 (31126-1337)
        Atlanta, GA 30326
        Telephone: (404) 523-7706
        Facsimile: (404) 524-1648
        efile@pmkm.com

Brad R. Sohn
Florida Bar No. 98788
*Pro Hac Vice Application*
*Forthcoming*
**THE BRAD SOHN LAW FIRM, PLLC**
1600 Ponce De Leon Blvd.
Suite 1205
Coral Gables, FL 33134
Telephone: (786) 708-9750
Facsimile: (305) 397-0650
brad@bradsohnlaw.com

Graham LippSmith
*Pro Hac Vice Application*
*Forthcoming*
MaryBeth LippSmith
*Pro Hac Vice Application*
*Forthcoming*
Jaclyn L. Anderson
*Pro Hac Vice Application*
*Forthcoming*
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
g@lippsmith.com
mb@lippsmith.com
jla@lippsmith.com

*Attorneys for Plaintiffs*