# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DEREK CARRIER and DORA CARRIER, individually, and on behalf of all others similarly situated;<br><br>    Plaintiffs,<br><br>vs.<br><br>RAVI ZACHARIAS INTERNATIONAL MINISTRIES, INC., a 501(c)(3) Corporation; RZIM PRODUCTIONS, INC., a Georgia Non-Profit Corporation; MARGARET ZACHARIAS, in her Capacity as ADMINISTRATOR OF THE ESTATE OF RAVI KUMAR ZACHARIAS,<br><br>    Defendants. | Case No.:  1:21-cv-03161-TWT<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED DISCOVERY AND REQUEST FOR EXPEDITED HEARING** |

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ........................................................................1

FACTUAL BACKGROUND .......................................................3

ARGUMENT ............................................................................9

    I.     LEGAL STANDARD FOR EXPEDITED DISCOVERY ..................9

           A.    Defendants Obtained Funds by Deceit .....................................10

           B.    There is Imminent Danger That Property and Assets Will Be Lost..........................................................................13

           C.    Plaintiffs' Discovery Requests are Narrowly Tailored.............17

    II.    AN IMMEDIATE HEARING ON PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY IS WARRANTED................................18

CONCLUSION ........................................................................20

# <u>TABLE OF AUHTORITIES</u>

<u>Page(s)</u>

**Cases**

*Arista Records LLC v. Does 1-7*, No. 3:08CV18 CDL,
2008 WL 542709 (M.D. Ga. Feb. 25, 2008) ......................................................9

*Commissariat a l'Énergie Atomique v. Dell Computer Corp.*, No. 03-CV-484-KAJ,
2004 WL 406351 (D. Del. March 3, 2004) ......................................................16

*Educata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084 (D. Minn. 1984),
*aff'd in part*, *rev'd in part on other grounds*, 746 F.2d 429 (8th Cir. 1985) .......16

*Ellsworth Associates, Inc. v. United States,* 917 F. Supp. 841 (D.D.C. 1996)....9, 13

*Johnson v. Board of Regents*, 263 F.3d 1234 (11th Cir. 2001) .................................8

*L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527 (Fed. Cir. 1995) .............................18

*Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.*,
213 F.R.D. 418 (D. Colo. 2003) ....................................................................9, 17

*TracFone Wireless, Inc. v. Holden Prop. Servs.*, LLC,
299 F.R.D. 692 (S.D. Fla. 2014)..........................................................................9

*United States v. Mayer*, No. 03-CV-415-T26-TGW,
2003 WL 1950079 (M.D. Fla. Feb. 20, 2003) ....................................................13

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................8

Fed. R. Civ. P. 26(d)(1)..............................................................................................8

Fed. R. Civ. P. 30 ......................................................................................................8

Fed. R. Civ. P. 33 ......................................................................................................8

## <u>TABLE OF AUHTORITIES</u>

<u>**Page(s)**</u>

**Rules**

Fed. R. Civ. P. 34 ...........................................................................................8

Fed. R. Civ. P. 36 ...........................................................................................8

N.D. Ga. L.R. 7.2(B) ....................................................................................18

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION FOR EXPEDITED DISCOVERY AND REQUEST
FOR EXPEDITED HEARING</u>**

Plaintiffs Derek Carrier and Dora Carrier ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure Rule 26(d) and Local Rules 7.2(B) and 26.2(B), hereby file this Memorandum of Law in Support of their Emergency Motion for Expedited Discovery ("Motion"). Plaintiffs respectfully request that this Motion be heard on an expedited basis. In support thereof, Plaintiffs state as follows:

## INTRODUCTION

Defendants Ravi Zacharias International Ministries, Inc., RZIM Productions, Inc. (together, "RZIM"), and Margaret Zacharias, in her capacity as Administrator of the Estate of Ravi Kumar Zacharias ("Estate") by and through decedent Ravi Zacharias ("Zacharias"), (collectively, "Defendants"), induced and bilked thousands, if not tens or hundreds of thousands, of well-meaning and faithful Christians out of financial contributions totaling at least tens of millions of dollars.[1] RZIM and Zacharias deceived Plaintiffs and the putative Class under the guise of being faith-filled Christian leaders, who were devoted to Christian evangelism, the apologetic defense of Christianity, and humanitarian efforts.[2] Plaintiffs and

---

[1] Class Action Complaint ("Complaint"), ¶ 2.
[2] *Id.* at ¶¶ 3. 16–17, 19.

1

putative Class Members placed their faith—and their monetary donations—with RZIM and Zacharias to support RZIM's stated mission of spreading the Gospel of Jesus Christ and training disciples to defend Christianity around the globe.[3] Instead, Plaintiffs' and the putative Class's donated funds supported an organization led by a serial sexual predator and financed various modes of sexual abuse of many women.[4]

Defendants previously have shown themselves to be deceitful. They defended Zacharias in the face of accusations of sexual abuse, failed to investigate those accusations, used donated funds to finance sexual misconduct, and continue to use donated funds for personal and other purposes that fall outside of their stated missions.[5] Plaintiffs reasonably conclude that further action by preliminary injunction or other court action may be necessary to protect the funds Defendants received via improper and deceitful means from any further waste, concealment, and diminution of value during the pendency of this litigation.

Accordingly, Plaintiffs seek an order permitting them to begin limited discovery in this matter immediately and directing Defendants (1) to respond to Plaintiffs' written discovery requests and produce documents in response to

---

[3] *Id.* at ¶ 3.
[4] *Id.* at ¶¶ 3, 24–27.
[5] *Id.* at ¶¶ 28–29, 34.

Plaintiffs' requests for production within 14 days after entry of the requested order and (2) to make themselves available for deposition, at a mutually convenient time, between 21 and 35 days after entry of the requested order.

## FACTUAL BACKGROUND

Ravi Zacharias founded RZIM in 1984.[6] RZIM's reported mission was "to support, expand, and enhance the preaching and teaching ministry of Ravi Zacharias, distinctive in its strong evangelistic and apologetic foundation, intended to touch both the heart and the intellect of the thinkers and opinion-makers of society with the Truth of the Gospel of Jesus Christ."[7]

RZIM and Zacharias held themselves out to be Christian apologetics charged with defending Christianity. RZIM and Zacharias further held themselves out to be pious followers of the Holy Gospel, maintaining a religious level of morality and following the teachings of Jesus Christ. Zacharias explicitly presented himself as a devoted Christian, living a Christian lifestyle in keeping with the Gospel of Jesus Christ and worthy of leading others in their Christian faith.

---

[6] *Ravi Zacharias Int'l Ministries/RZIM*, MINISTRY WATCH: EMPOWERING DONORS TO CHRISTIAN MINISTRIES,
https://briinstitute.com/mw/ministry.php?ein=133200719 (last visited July 9, 2021); Complaint, ¶ 2.
[7] *Ravi Zacharias Int'l Ministries/RZIM*, MINISTRY WATCH: EMPOWERING DONORS TO CHRISTIAN MINISTRIES, *supra*.

Through conferences, seminars, and audio programming, Defendants, promised

prospective donors that their charitable contributions would support RZIM's stated

mission, which includes spreading the Gospel of Jesus Christ and training disciples

to defend Christianity around the globe.[8]

     In January 2020, Plaintiffs contributed $30,000 to RZIM. The limited,

publicly available tax information shows that RZIM collected more than $26

million in gross receipts in 2014,[9] following years of significant revenue.[10] These

records suggest that many others, in addition to Plaintiffs, believed RZIM and

---

[8] Complaint, ¶ 3, 17, 19.

[9] Form 990, Ravi Zacharias Int'l Ministries,
https://990s.foundationcenter.org/990_pdf_archive/133/133200719/133200719_20
1509_990.pdf (last visited July 9, 2021); *see also* Sohn Dec., Ex. B.

[10] Form 990, Ravi Zacharias Int'l Ministries, ProPublica,
https://projects.propublica.org/nonprofits/display_990/133200719/2015_03_EO%2
F13-3200719_990_201409 ($29,407,538 in gross receipts for 2013) (last visited
July 12, 2021);
https://projects.propublica.org/nonprofits/display_990/133200719/2014_04_EO%2
F13-3200719_990_201309 ($18,395,166 in gross receipts for 2012) (last visited
July 12, 2021);
https://projects.propublica.org/nonprofits/display_990/133200719/2013_08_EO%2
F13-3200719_990_201209 ($17,074,465 in gross receipts for 2011) (last visited
July 12, 2021);
https://projects.propublica.org/nonprofits/display_990/133200719/2012_06_EO%2
F13-3200719_990_201109 ($20,875,459 in gross receipts for 2010) (last visited
July 12, 2021);
https://projects.propublica.org/nonprofits/display_990/133200719/2011_05_EO%2
F13-3200719_990_201009 ($15,721,084 in gross receipts for 2009) (last visited
July 12, 2021).

Zacharias were engaged only in the holy, moral, and upstanding work of Christian evangelism and apologetic outreach and, accordingly, donated to RZIM to support that work.[11]

Zacharias, however, was not who he claimed to be. For many years, Zacharias was, in fact, a serial sexual predator, spiritual predator, and a prolific sex offender.[12] Zacharias provided funding for two massage spas starting in 2004, and nearly two dozen massage therapists who worked at those spas confirmed that Zacharias perpetrated sexual abuse, spiritual abuse, or both.[13] Zacharias used RZIM money to provide financial support to women he abused, elicited personal and vulnerable histories from these women, and used "religious language during their encounters."[14]

Zacharias's payouts came in the form of large tips following massages, showering the targets of his abuse with expensive gifts, and, in at least one

---

[11] *See* Complaint, ¶ 23.
[12] *Id.* at ¶¶ 2–3.
[13] Complaint, ¶ 25.
[14] Declaration of Bradford Rothwell Sohn in Support of Plaintiffs' Emergency Motion for Expedited Discovery ("Sohn Dec."), Ex. A, Lynsey M. Barron & William P. Eiselstein, Miller & Martin PLLC, Report of Independent Investigation into Sexual Misconduct of Ravi Zacharias (Feb. 9, 2021) https://s3-us-west-2.amazonaws.com/rzimmedia.rzim.org/assets/downloads/Report-of-Investigation.pdf ("Miller & Martin Report"), at 5; *see* Complaint, ¶ 25.

instance, paying $40,000 for a sexual abuse survivor's culinary schooling.[15] In addition, Zacharias traveled with a personal massage therapist, who RZIM paid. "On paper, her job title reflected other responsibilities, but it appears that her primary job was to massage Mr. Zacharias."[16]

Monthly financial support for women Zacharias abused was also funneled through Touch of Hope, a discretionary fund that RZIM earmarked as a "humanitarian effort."[17] Despite this label, a significant portion of Touch of Hope's wire payments were made to "or for the benefit of" four women who were Zacharias's massage therapists at some point.[18]

In 2017, Lori Anne Thompson, who was not one of Zacharias's massage therapists, brought allegations of sexual misconduct against Zacharias directly to RZIM leadership and/or Board of Directors, reporting inappropriate communications from and interactions with Zacharias.[19] Zacharias claimed innocence and threatened to leave RZIM; in turn, RZIM steadfastly defended Zacharias despite having been provided with "a notebook of evidence" by and

---

[15] Miller & Martin Report, 5; Complaint, ¶ 34.
[16] Miller & Martin Report, 5; Complaint, ¶ 34.
[17] Miller & Martin Report, 5; Complaint, ¶ 34.
[18] Miller & Martin Report, 5; Complaint, ¶ 34.
[19] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021); Complaint, ¶¶ 27–28.

through an RZIM Board member and public relations consultant.[20] RZIM's actions

and failure to respond appropriately to reports of Zacharias's sexual misconduct

furthered the public deception that Zacharias was a faith-filled, moral, and

upstanding Christian leader.[21] RZIM's acts and omissions further allowed

Zacharias to continue sexually abusing women under the cover of Christian

ministry and permitted Zacharias's ongoing, deceptive fundraising efforts for

RZIM.[22]

RZIM is entirely donor funded and engaged in a pattern and practice of

using donated funds for purposes other than the stated mission of Christian

evangelism and apologetic outreach.[23] First, RZIM allowed donated funds to be

diverted for use in Zacharias's schemes to perpetrate sexual abuse.[24] Second,

RZIM used donated funds to defend Zacharias against Ms. Thompson's allegations

and to attack her.[25] Now, RZIM is using donated funds to deal with the aftermath

of the scandal that erupted when additional allegations of Zacharias's rampant

---

[20] Open Letter from the International Board of Directors of RZIM on the
Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-
updates/board-statement (last visited June 30, 2021); Complaint at ¶¶ 27–28.
[21] Complaint, ¶ 28.
[22] *Id.*
[23] *Id.* at ¶ 20.
[24] *Id.* at ¶ 34.
[25] *See id.* at ¶ 28.

sexual abuse finally came to light in September 2020, including hiring Guidepost

Solutions, "a management/compliance consulting firm," and victim-advocate

Rachael Denhollander to act as a "consultant."[26]

Moreover, Zacharias's wife, Margaret Zacharias is the Administrator of

Zacharias's Estate and remains a staunch supporter and defender of her husband.

She denies that her husband ever sexually abused women, despite ample evidence

to the contrary and in the face of the results of an independent investigation

detailing the abuse.[27] Given Mrs. Zacharias's steadfast denial of her husband's

sexual misconduct, the Estate is unlikely to preserve funds that should be used to

compensate Plaintiffs and putative Class Members for their losses.

Initiating limited discovery as to Defendants' finances in short order is

necessary to protect Plaintiffs' and the Class's interests in Defendants' property

and assets, which Defendants obtained through deceit and used for improper

purposes. This discovery is a critical first step in efforts to protect Defendants'

property and assets against concealment, loss, waste, destruction, further

expenditure, and/or diminution in value so that Plaintiffs and putative Class

---

[26] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021).
[27] Margie Zacharias, Email published to https://defendingravi.com/ (last visited July 12, 2021).

Members stand a chance of recovering what rightfully should be returned to them.

## ARGUMENT

## I.     LEGAL STANDARD FOR EXPEDITED DISCOVERY

Rules 33 and 34 of the Federal Rules of Civil Procedure, as well as this Court's inherent powers to manage discovery, authorize this Court to grant the requested relief. Fed. R. Civ. P. 26, 30, 33, 34 & 36. District courts have broad discretion in managing discovery. *Johnson v. Board of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001). This discretion includes the authority to order expedited discovery. Fed. R. Civ. P. 26(d)(1) (permitting the court to grant leave to conduct discovery before parties to an action have conferred).

"A court may allow expedited discovery upon a showing of good cause." *Arista Records LLC v. Does 1-7*, No. 3:08CV18 CDL, 2008 WL 542709, at *1 (M.D. Ga. Feb. 25, 2008); *TracFone Wireless, Inc. v. Holden Prop. Servs.*, LLC, 299 F.R.D. 692, 694 (S.D. Fla. 2014) ("Federal courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes 'good cause' for such discovery."). Good cause may be shown where the plaintiffs have no other way of obtaining the information sought and where time is of the essence. See *Arista Records*, 2008 WL 542709, at *3. In addition, "[t]he good cause standard may be satisfied where a party seeks a preliminary

injunction." *Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003), (citing, *e.g., Ellsworth Associates, Inc. v. United States,* 917 F. Supp. 841, 844 (D.D.C. 1996).

Here, there is good cause for the requested expedited discovery. First, Plaintiffs have no other method of obtaining the information sought, which Plaintiffs are informed and believe to be within Defendants' exclusive control. Time is of the essence to preserve RZIM's remaining funds and assets. Second, Plaintiffs must quickly assess whether further action, such as a preliminary injunction or appointing a receiver, is warranted to take control of and safeguard Defendants' property and assets from concealment, loss, waste, destruction, further expenditure, and/or diminution in value until the Court has the opportunity to rule on the merits of Plaintiffs' claims. Finally, Defendants have engaged in deceitful practices, and they have—and continue to—divert and misuse funds rightfully recoverable by Plaintiffs and the putative Class.

## A.    Defendants Obtained Funds by Deceit

RZIM and Zacharias engaged in deceitful behavior to induce Plaintiffs and putative Class Members to make financial contributions to RZIM, which Zacharias led.[28] RZIM and Zacharias deceived faithful Christians, soliciting their financial

---

[28] Complaint, ¶ 2.

10

support for a purported mission of Christian evangelism, apologetic defense of Christianity, and humanitarian efforts.[29] RZIM and Zacharias bilked tens—if not hundreds—of millions of dollars from well-meaning donors who believed RZIM and Zacharias to be faith-filled Christian leaders.[30] In fact, Zacharias was a prolific sexual predator who used his ministry and RZIM funds to perpetrate sexual and spiritual abuse against women.[31]

RZIM and Zacharias, through conferences, seminars, and audio programming, promised prospective donors that their charitable contributions would support RZIM's stated mission, which includes spreading the Gospel of Jesus Christ and training disciples to defend Christianity around the globe.[32] Instead, donated funds both supported an organization led by a sexual predator and financed Zacharias' sexual misconduct, including, but not limited to, financing massage spas where Zacharias engaged in sexually predatory behavior and paying hush money to the targets of his sex abuse.[33] The deceitful nature of such transfers of funds from RZIM to Zacharias's targets of sex abuse raise the inference of continued deceit and warrant immediate review of Defendants' financial practices.

---

[29] *Id.*
[30] *Id.* at ¶ 2.
[31] *Id.* at ¶¶ 2–3.
[32] *Id.* at ¶ 3.
[33] *Id.*

11

After first refusing to even investigate allegations of Zacharias's sexual misconduct, RZIM hired a law firm years later to conduct an independent investigation.[34] That investigation concluded that Zacharias engaged in sexual misconduct for years and that Zacharias used RZIM funds in the furtherance of that abuse, also for years.[35] RZIM has all but admitted that Zacharias's actions—and RZIM's actions—wronged their financial supporters. RZIM's CEO, who is also Zacharias's daughter, stated in a video posted to the ministry's website that Zacharias's sexual misconduct and RZIM's initial response to early allegations were "diametrically opposed to everything [they] believe about the value and dignity of every single person."[36] Yet Defendants have not offered to repay donations received while they perpetrated these deceitful, wrongful acts. Instead, Defendants continue to misuse the funds for damage control and for purposes other than RZIM's stated mission.[37]

Plaintiffs' counsel thoroughly reviewed available financial disclosures for RZIM.[38] Those financial disclosures included Form 990 tax documents that RZIM

---

[34] Miller & Martin Report, Sohn Dec., Ex. A at 1; Complaint at ¶¶ 28, 32.
[35] Miller & Martin Report at 3–5, 8–10, 12; Complaint at ¶ 34.
[36] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021); *see* Complaint at ¶ 37.
[37] Sohn Dec., ¶¶ 10, 11; Complaint at ¶¶ 2, 3.
[38] Sohn Dec., ¶ 5.

filed with the IRS from 2001 to 2015. These documents indicate that RZIM raised

nearly $18.85 million in 2011 with revenue generally increasing through fiscal

year 2014 when RZIM raised $25.7 million.[39] Plaintiffs' counsel have been unable

to locate additional Form 990s for RZIM after 2014, likely because they do not

exist. In 2015, RZIM changed its status from a 501(c)(3) nonprofit to a church or

association of churches, and the IRS does not require churches to file Form 990s.[40]

MinistryWatch, an independent advocate group that provides information of

misleading and wasteful spending practices by charitable organizations, gives

RZIM a "C" transparency and accountability grade, presumably because it ceased

completing and publicly filing Form 990s.[41] RZIM's lack of transparency as to its

financial information gives Plaintiffs cause for concern that RZIM has moved, or

will move, donor funds and/or donor-funded assets, to other entities, charities, or

ministries, which would be contrary to donor intent.[42]

**B.      There is Imminent Danger That Property and Assets Will Be Lost**

Expedited discovery is particularly appropriate where, as here, there is the

potential for injunctive relief due to the risk of irreparable harm. See *Ellsworth*,

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at ¶ 6.

[42] *Id.* at ¶ 11.

*supra*, 917 F. Supp. at 844; see also *United States v. Mayer*, No. 03-CV-415-T26-TGW, 2003 WL 1950079 at *1 (M.D. Fla. Feb. 20, 2003) (ordering expedited discovery due to the risk of irreparable injury).

There exists an imminent risk that Defendants' property and assets will be lost, concealed, or significantly diminished in value. Defendants have previously used their resources—funded by donors like Plaintiffs and the putative Class—to defend and coverup Zacharias's misconduct. RZIM allowed the discretionary fund, Touch of Hope, to be used to provide financial support for women Zacharias sexually and spiritually abused.[43] RZIM also defended Zacharias against sexual misconduct allegations brought by Lori Anne Thompson in 2017.[44] Now, RZIM is no longer spreading the Gospel of Jesus Christ through ministry; RZIM is spending funds on a consultant and a consulting firm to help respond to the sex abuse scandal.[45]

RZIM's board of directors, has "engaged victim-advocate Rachael Denhollander" who will act as a "consultant," who will educate and advise

---

[43] Complaint, ¶ 34.

[44] *Id.* at ¶¶ 27–28.

[45] A Word from CEO Sarah Davis, RZIM, https://www.facebook.com/RZIMfb/videos/as-ceo-sarah-davis-shared-in-her-last-update-we-have-been-journeying-as-a-minist/305106931332208/ (last visited August 17, 2021).

14

[RZIM's] Board and senior leadership in understanding trauma and abuse as well as best-standards practices" and who will also "serve as a confidential liaison with survivors and to help guide the process of care, justice, and restitution for those who have been victimized."[46] In addition, RZIM has "engaged Guidepost Solutions, a management/compliance consulting firm . . . to conduct a thorough evaluation of RZIM, including its structures, culture, policies, processes, finances, and practices."[47] Using donor funds to hire victim-advocate and consultant Rachel Denhollander and Guidepost Solutions as a management/compliance consulting firm is contrary to the donors' intent in and purposes for giving to RZIM.

In addition, RZIM announced in March 2021 that it would become a grant-making organization that supports, in part, "the prevention of and caring for victims of sexual abuse."[48] Using donor funds to become a grant-making organization dedicated in part to victims of sexual abuse is similarly contrary to the donors' intent in and purposes for giving to RZIM

Further, the Administrator of the Estate continues to deny that Zacharias could have ever engaged in sexual misconduct, publicly defending Zacharias's

---

[46] Sohn Dec. ¶ 9.
[47] *Id.*
[48] *Id.* ¶ 10.

name and reputation and signaling that she would undoubtedly use all available resources to defend any claims of Zacharias's wrongdoing.[49]

These actions and inactions call into question Defendants' financial viability and suggest it is highly likely Defendants will conceal, waste, or diminish the value of their property and assets unless Plaintiffs act now to do whatever is necessary to manage and safeguard the property.

Given that RZIM is now dedicating funds to consultants and a consulting firm to manage the fallout from Zacharias's sex abuse scandal, and given the Administrator's staunch defense of Zacharias to this day, it is highly unlikely that Defendants would ever voluntarily return the donated funds they received from Plaintiffs and putative Class Members through deceit.

Plaintiffs do not yet have access to Defendants' financial records, and it is reasonable to conclude there exists an imminent and increasing risk that any remaining assets Defendants hold will be dissipated or concealed long before this Court enters final judgment in this case. Plaintiffs and putative Class Members could be left with a victory in name only, unable to collect on a hard-fought judgment.

---

[49] Margie Zacharias, Email published to https://defendingravi.com/ (last visited July 12, 2021).

### C.    Plaintiffs' Discovery Requests are Narrowly Tailored

A request for expedited discovery should be granted where the proposed discovery requests are narrowly tailored to the issues that may be raised in a motion for a preliminary injunction. See *Commissariat a l'Énergie Atomique v. Dell Computer Corp.*, No. 03-CV-484-KAJ, 2004 WL 406351 at *1 (D. Del. March 3, 2004) (granting motion for expedited discovery) (citing *Educata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984), *aff'd in part*, *rev'd in part on other grounds*, 746 F.2d 429 (8th Cir. 1985) (granting motion for expedited discovery because it would "better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing.")).

The discovery requests here are limited in scope to information relevant to a future motion for a preliminary injunction or other relief that may be taken to protect Defendants' property and assets from further misuse and improper diversion. In sum, these discovery requests include interrogatories, document requests, and Rule 30(b)(6) deposition notices pertaining to the following: RZIM records of donations during the class period; RZIM payments to Zacharias during the class period; RZIM and Touch of Hope payments to any massage therapist and/or employees of a massage spa during the class period; the identities of any

witnesses with knowledge of RZIM finances and accounting during the class

period to present; an accounting of RZIM funds used for any legal defense of

Zacharias, for any response to allegations made by Lori Anne Thompson, and for

any response to the sexual misconduct allegations, including, but not limited to, the

hiring of Guidepost Solutions and any other consultant or victim-advocate; and any

RZIM payments made to other ministries, churches, charitable organizations, or

other entities during the class period and to present.

      In addition, Plaintiffs and the putative Class will be entitled to seek this

discovery as a matter of course pursuant to the Federal Rules of Civil Procedure

and seek only to do so on an expedited basis. As a result, Defendants will suffer no

undue prejudice if the Court requires them to respond to the discovery requests in

an expedited fashion. See *Qwest Commc'ns Int'l*, *supra*, 213 F.R.D. at 420.

## II.    AN IMMEDIATE HEARING ON PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY IS WARRANTED.

      Due to the exigent circumstances underlying Plaintiffs' Motion, Plaintiffs

respectfully request that this Court conduct an immediate hearing on the Motion.

Upon a written motion showing good cause for the request, the Court can waive

the ordinary response time requirements of Local Rule 7.1 and hold "an immediate

hearing on any matter requiring such expedited procedure." N.D. Ga. L.R. 7.2(B).

This Local Rule and the discretionary power it affords the Court are consistent with the Court's "inherent power" to manage its docket in the interest of efficiency for all parties, including the Court. *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995).

As discussed herein and in the Complaint, Defendants reaped tens of millions of dollars per year, representing that it used and would use those donations to support Christian ministry.[50] In reality, RZIM and Zacharias were engaged in activities diametrically opposed to Christianity and diverted funds from ministry efforts to finance Zacharias's sexual abuse of women.[51] Now without its charismatic leader—and facing publicized and true sex abuse allegations— Defendants are not ministering Christianity with an apologetic mission and do not appear to be engaged in direct fundraising efforts. Nevertheless, RZIM is continuing some business operations with hired consultants to chart a path forward. These circumstances suggest that Defendants' financial viability is tenuous. Thus, Plaintiffs and putative Class Members have reason to believe that their interests in Defendants' property and assets is imperiled and that Defendants are, or imminently will be, engaged in the process of wasting, concealing, or otherwise

---

[50] Complaint, ¶¶ 2, 3, 19–23.
[51] *Id.* at ¶¶ 2, 3, 24–28.

diminishing whatever portion of the donated funds remain, preventing Plaintiffs and putative Class Members from ever collecting on their meritorious claims.

Accordingly, Plaintiffs respectfully request that the Court waive the time requirements for Defendants' response to the Motion for Expedited Discovery and schedule an immediate hearing on the matter to prevent further harm and delay.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an Order directing Defendants (1) to respond to Plaintiffs' written discovery requests and produce documents in response to Plaintiffs' requests for production within 14 days after entry of the requested order; and (2) to make themselves available for deposition, at a mutually convenient time, between 21 and 35 days after entry of the requested order. Moreover, in light of the exigent circumstances underlying this Motion, Plaintiffs further request that the Court waive the time requirements for Defendants to respond to the Motion and immediately schedule a hearing on the matter.

DATED: August 25, 2021

By:   */s/ Michael L. McGlamry*
      Michael L. McGlamry
      Georgia Bar No. 492515
      **POPE MCGLAMRY, PC**
      3391 Peachtree Road, Suite 300
      PO Box 19337 (31126-1337)

Atlanta, GA 30326
Telephone: (404) 523-7706
Facsimile: (404) 524-1648
efile@pmkm.com

Brad R. Sohn
Florida Bar No. 98788
*Admitted Pro Hac Vice*
**THE BRAD SOHN LAW FIRM, PLLC**
1600 Ponce De Leon Blvd.
Suite 1205
Coral Gables, FL 33134
Telephone: (786) 708-9750
Facsimile: (305) 397-0650
brad@bradsohnlaw.com

Graham LippSmith
*Admitted Pro Hac Vice*
MaryBeth LippSmith
*Admitted Pro Hac Vice*
Jaclyn L. Anderson
*Admitted Pro Hac Vice*
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
g@lippsmith.com
mb@lippsmith.com
jla@lippsmith.com

*Attorneys for Plaintiffs*