## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DEREK CARRIER, DORA CARRIER, ELIZABETH S. NELSON, and CHRIS J. NELSON individually, and on behalf of all others similarly situated;<br><br>      Plaintiffs,<br><br>  vs.<br><br>RAVI ZACHARIAS INTERNATIONAL MINISTRIES, INC., a Georgia Domestic Non-Profit Corporation; RZIM PRODUCTIONS, INC., a Georgia Domestic Non-Profit Corporation; and MARGARET ZACHARIAS, in her Capacity as ADMINISTRATOR OF THE ESTATE OF RAVI ZACHARIAS,<br><br>      Defendants. | Case No.:   1:21-cv-03161-TWT<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Derek Carrier, Dora Carrier, Elizabeth S. Nelson, and Chris J. Nelson ("Plaintiffs"), on their own behalf and on behalf of all others similarly situated ("Class Members"), bring this class action against Ravi Zacharias International Ministries, Inc., RZIM Productions, Inc. (together, "RZIM"), and

1

Margaret Zacharias, in her capacity as the Administrator of the Estate of Ravi Zacharias ("Estate") (collectively "Defendants") and complain and allege the following upon personal knowledge as to their own experiences, and based upon on information and belief as to other matters:

## INTRODUCTION

1.     This is a class action lawsuit brought against Defendants by Plaintiffs on behalf of themselves and similarly situated donors and consumers who contributed funds to Defendants to support Defendants' Christian apologetic ministry, outreach, training, and other programming.

2.     Since at least 2004, RZIM, led by decedent Ravi Zacharias ("Zacharias"), has deceived faithful Christians, soliciting their financial support for its purported mission of Christian evangelism, apologetic defense of Christianity, and humanitarian efforts. Defendants bilked hundreds of millions of dollars from well-meaning contributors who believed RZIM and Zacharias to be faith-filled Christian leaders. In fact, Zacharias was a prolific sexual predator who used his ministry and RZIM funds to perpetrate sexual and spiritual abuse against women.

3.     Defendants, through conferences, seminars, and audio programming, consistently and uniformly promised that charitable contributions would support RZIM's stated mission, which includes spreading the Gospel of Jesus Christ and

training disciples to defend Christianity around the globe. Instead, contributed funds both supported an organization led by a sexual predator and financed Zacharias's sexual misconduct, including, but not limited to, financing massage spas where Zacharias engaged in sexually predatory behavior and paying hush money to the targets of his sex abuse.

4.     As a result of Defendants' consistent and uniformly misleading, fraudulent, and deceitful acts, financial contributors, including Plaintiffs and putative Class Members, have suffered an ascertainable loss, injury in fact, and have otherwise suffered harm based on Defendants' conduct.

5.     Accordingly, Plaintiffs bring this action, on behalf of themselves and the putative Class, to seek redress. Plaintiffs seek monetary relief for damages suffered, costs of suit, including reasonable attorney fees, and public injunctive relief.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different

states. This Court also has supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367.

7.     Venue properly lies in this judicial district pursuant to 28 U.S.C.

§ 1391 because a substantial portion of the conduct described in this Complaint was

carried out in this district. Furthermore, RZIM is headquartered and has its principal

place of business in this district, decedent Ravi Zacharias resided and was

domiciled in this district, and his Estate is being Administered in the Probate Court

of Fulton County Georgia, in this district, subjecting Defendants to personal

jurisdiction in this district.

8.     Venue is also proper in this judicial district pursuant to O.C.G.A. § 43-

17-15 because RZIM has its principal place of business in this district, and based on

information and belief, violations of the Charitable Solicitations Act and the Fair

Business Practices Act occurred in this district.

9.     The Court may exercise personal jurisdiction over Defendants because

they maintain headquarters within this judicial district, are registered to conduct

business in this judicial district, have designated an agent for service of process in

this judicial district, have employees located in this judicial district, list their

addresses as within this judicial district, the Estate is being administered in this

district, and Defendants intentionally and purposefully conduct services within the

4

state of Georgia and throughout the United States. The exercise of personal

jurisdiction over Defendants in Georgia would not offend traditional notions of fair

play and substantial justice.

## THE PARTIES

10.     Plaintiffs Derek Carrier and Dora Carrier ("Carriers") are citizens of

the state of Nevada.

11.     On January 21, 2020, the Carriers contributed $30,000 to RZIM.

12.     Plaintiffs Elizabeth S. Nelson and Chris J. Nelson ("Nelsons") are

citizens of the state of Washington.

13.     The Nelsons contributed a total of $5,422.50 to RZIM from June 2014

through December 2020.

14.     According to the Georgia Secretary of State, Corporations Division,

Defendant Ravi Zacharias International Ministries, Inc. is a domestic non-profit

corporation with its principal place of business at 3755 Mansell Road, Alpharetta,

GA 30022. It can be served via its Registered Agent, Jonathan T. McCants, at 3414

Peachtree Road, Ste. 1150, Atlanta (Fulton County), Georgia 30326.

15.     According to the Georgia Secretary of State, Corporations Division,

Defendant RZIM Productions, Inc. is a Georgia non-profit corporation with its

principal place of business at 3755 Mansell Road, Alpharetta, GA 30022. Its

registered purposes include "serving the needs and interests of, performing certain functions of, and otherwise carrying out the purposes of and advancing and perpetuating the ministry and missions of Ravi Zacharias International Ministries, Inc., as well as making distributions to or for the use of organizations exempt at the time under Section 501(c)(3) of the Code." RZIM Productions, Inc. can be served via its Registered Agent, Jonathan T. McCants, at 3414 Peachtree Road, Ste. 1150, Atlanta (Fulton County), Georgia 30326.

16.    Plaintiffs are informed and believe that the decedent Zacharias was a citizen of the State of Georgia and resided in the city of Atlanta, Georgia. Margaret Reynolds Zacharias, Zacharias's wife, is the Administrator of his Estate, which Estate is being administered in the Probate Court of Fulton County, Georgia. Margaret Zacharias is sued in her capacity as the Administrator of the Estate of Ravi Zacharias.

## FACTUAL ALLEGATIONS

### Christian Apologetics

17.    Christian apologetics are devoted to the mission of defending the message and faith of Christianity, through presenting either evidence or "a more

philosophical and propositional approach."[1] Christian apologetics' "function is both to fortify the believer against personal doubts and to remove the intellectual stumbling blocks that inhibit the conversion of unbelievers."[2] "Apologetics is quite literally defense of the faith[.] Apologetics helps others develop an intellectual and reasonable examination of the Christian faith."[3]

**Ravi Zacharias and RZIM**

18.     Ravi Zacharias founded RZIM in 1984.[4] RZIM's reported mission is "to support, expand, and enhance the preaching and teaching ministry of Ravi Zacharias, distinctive in its strong evangelistic and apologetic foundation, intended to touch both the heart and the intellect of the thinkers and opinion-makers of society with the Truth of the Gospel of Jesus Christ."[5]

---

[1] Jerry Root, *What Are Christian Apologetics, and How Do They Relate to the Gospel Anyways?*, CHRISTIANITY TODAY, (June 14, 2018) https://www.christianitytoday.com/edstetzer/2018/june/what-are-christian-apologetics-and-how-do-they-relate-to-go.html.

[2] *Apologetics: Christianity*, BRITANNICA, https://www.britannica.com/topic/apologetics (last visited July 9, 2021).

[3] Jeff Augustine, *Apologetics v. Evangelicalism: Is There A Difference?*, COLORADO CHRISTIAN U. ADULT & GRADUATE STUD. BLOG, (April 29, 2020), https://www.ccu.edu/blogs/cags/2020/04/apologetics-vs-evangelism/.

[4] *Ravi Zacharias Int'l Ministries/RZIM*, MINISTRY WATCH: EMPOWERING DONORS TO CHRISTIAN MINISTRIES, https://briinstitute.com/mw/ministry.php?ein=133200719 (last visited July 9, 2021).

[5] *Id.*

19.     Defendants held themselves out to be Christian apologetics charged with defending Christianity. Defendants further held themselves out to be pious followers of the Holy Gospel, maintaining a religious level of morality and following the teachings of Jesus Christ. Zacharias explicitly presented himself as a devoted Christian who was living a Christian lifestyle in keeping with the Gospel of Jesus Christ and who was worthy of leading others in their Christian faith.

20.     RZIM reported more than $26 million in gross receipts in 2014,[6] which is the last year RZIM publicized its IRS Form 990.[7]

21.     RZIM indicated that its "vision [. . .] is to build a team with a fivefold thrust of evangelism, apologetics, spiritual disciplines, training, and humanitarian support . . . ."[8] RZIM worked toward this vision through conferences, lectures, and seminars held around the world.[9] RZIM also conducted its outreach through a weekly podcast program titled "Let My People Think" and a daily, 15-minute

---

[6] Form 990, Ravi Zacharias Int'l Ministry, https://990s.foundationcenter.org/990_pdf_archive/133/133200719/133200719_201509_990.pdf (last visited July 9, 2021).

[7] Warren Cole Smith, *The Way Back for Ravi Zacharias International Ministries*, MINISTRY WATCH: EMPOWERING DONORS TO CHRISTIAN MINISTRIES, ( Jan. 12, 2021), https://ministrywatch.com/the-way-back-for-ravi-zacharias-international-ministries/ (last visited July 9, 2021).

[8] *Id*.

[9] Ravi Zacharias Int'l Ministries, open990, https://www.open990.org/org/133200719/ravi-zacharias-international-ministries/ (last visited July 9, 2021).

audio program called "Just Thinking" available on radio, satellite, and the Internet.[10]

22.     The RZIM "Let My People Think" podcast features Zacharias, who preaches the teachings of RZIM, advertises the RZIM programs that train people to continue RZIM's mission of defending Christianity, and urges listeners to make monetary contributions to RZIM. This podcast states that RZIM and its podcast are entirely donor-supported.

23.     Zacharias dedicated the November 30, 2019 episode of the RZIM "Let My People Think" podcast to the "Celebration of Generosity Conference." Zacharias noted that "traveling around the globe with 93 other speakers costs a lot of money," telling listeners that "this is where you come into it with your prayers, to uphold us, and with your giving," revealing "a tall goal of $300,000" for Giving Tuesday and stating that "if you seek the mind of the Lord and ask Him what he will have you give, I am sure we can meet that goal."[11] The podcast implored listeners to give to RZIM now because "without givers like you, our Ministry would not be able to continue reaching those around the globe with the Gospel,"

---

[10] *Id.*
[11] Ravi Zacharias, *Generous Giving, Part 1*, RZIM: LET MY PEOPLE THINK BROADCASTS, 01:16–01:38, (Nov. 30, 2019), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/generous-giving-part-1-48828363.

explaining that RZIM needs financial contributions to "to equip Christians and to provide thoughtful answers to difficult questions" in  cities, corporations, campuses, and churches.[12]

24.    In the second part of that podcast, dated December 7, 2019, Zacharias solicits contributions:

> [A]s we come to the end of the calendar year, and begin a new one, we really need your prayers. We really need your support. I'm asking this on behalf of our entire speaking team: 93 speakers in 15 countries and hundreds fulltime behind the scenes. Please ask the Lord what he would have you do. We need your help. We need your prayers.  We'll do this together.[13]

The podcast asks listeners: "Every moment of our lives is filled with meaning and purpose, but do you know what God's purpose is for your life? And how are you giving back to God?"[14] Zacharias goes on to describe having "71 apologists placed in 15 different countries" and promises that "as long as there is breath in [his] body," he will continue to "train apologists for the future."[15] The podcast ultimately asks listeners to consider making a financial contribution to RZIM at the

---

[12] *Id.* at 24:50–25:14.

[13] Ravi Zacharias, *Generous Giving, Part I1*, RZIM: LET MY PEOPLE THINK BROADCASTS, 01:06–01:29, (Dec. 7, 2019), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/generous-giving-part-2-49179087

[14] *Id.* at 01:55–02:04.

[15] *Id.* at 18:26–18:33, 18:44–18:50.

end of the fiscal year and thanks them for their "prayers and financial support."[16]

25.     After years of listening to the RZIM podcast and otherwise hearing the uniform messages of Zacharias's strong Christian leadership and RZIM's mission, Plaintiffs Dora and Derek Carrier felt moved by RZIM's purported success in developing and training proper apologetics and leading thousands of people to place their faith in Jesus Christ. The Carriers frequently listened to the "Let My People Think" podcast from early 2019 until Zacharias's death in 2020 and watched videos of Zacharias preaching, which were posted online. From these podcasts and videos, the Carriers were impacted by Zacharias and the answers he gave in response to those questioning Christianity and God's existence. Over time, the Carriers came to believe they were hearing teachings of the Gospel from a moral, righteous, and humble Christian leader. The Carriers were also impacted by the global reach of Zacharias and RZIM in spreading the Gospel of Jesus Christ that were espoused in the podcast episodes and online videos.

26.     The Carriers heard many episodes of the "Let My People Think" podcast and watched videos of Zacharias posted on YouTube. The Carriers were thereafter impressed with Zacharias as a purported Christian apologetic capable of preaching the Gospel, presenting philosophical arguments for the existence of God,

---

[16] *Id.* at 25:58–26:11.

and speaking to the issues morality, evil, and life's origin and meaning.

27.     The Carriers also recall hearing messages at the end of each podcast episode that conveyed RZIM's mission, described efforts RZIM was making to spread the Gospel around the world, and indicated that RZIM could not do its work without listeners' financial support. The Carriers specifically recall hearing the following message from a July 4, 2020 episode entitled "A Deliverer is Born, Part 1":

> The vision of RZIM is built on five pillars made up of evangelism, apologetics, spiritual disciplines, training, and humanitarian support. A fundamental part of this mission is to train men and women to defend the power and coherence of the Gospel of Jesus Christ. Our hope is to empower you to engage in earnest conversations with those who have questions about the Christian faith. Your donations make it possible for us to continue to reach others with the gospel and we cannot do this work without your help.[17]

28.     In late 2019 and early 2020, the Carriers carefully and prayerfully considered which ministries would receive their yearly tithe, or a portion thereof, and they readily accepted the call to provide financial support to Zacharias and RZIM. In making their financial contribution, the Carriers reasonably relied on Zacharias's and RZIM's uniform messaging presented in podcasts and online

---

[17] Ravi Zacharias, *A Deliverer is Born, Part 1*, RZIM: LET MY PEOPLE THINK BROADCASTS, 23:56–24:28 (July 4, 2020), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/a-deliverer-is-born-part-1-67618908.

videos that they were dedicated to a mission of Christian apologetics and that contributions made by people like the Carriers would be used to financially support that mission, as described herein. This uniform messaging was material and central to the Carriers' decision to contribute to Zacharias and RZIM.

29.     At no point prior to February 2021 did anyone at RZIM inform the Carriers that contributed funds were also used to further serious sexual misconduct and to cover up that misconduct. The Carriers would not have provided money to RZIM had they been aware of these facts and of Zacharias's moral failings.

30.     The Nelsons also decided to make financial contributions to RZIM, including certain of its departments, after years of hearing Zacharias speak and reading his writings about RZIM's Christian apologetic mission, including spreading the Gospel and training others to minister as Christian apologetics. Plaintiff Elizabeth Nelson listened to Zacharias speak of Christian apologetics and the Gospel of Jesus Christ through radio programming for approximately 15 years and would speak with her husband, Plaintiff Chris J. Nelson, about Zacharias's preaching. From these radio programs, the Nelsons recall that Zacharias spoke of "spreading the Gospel around the Globe," a mission of "preaching the Bible," and about "winning souls for Christ." The Nelsons further recall that Zacharias would speak of needing money to fund the mission of spreading the Gospel around the

world and urged listeners to give "what God has placed on your heart to give." Elizabeth Nelson also read books written by Zacharias or others within the RZIM organization, including but not limited to *Walking from East to West: God in the Shadows*, *The Grand Weaver*, and *The Scent of Water*.

31.     Elizabeth Nelson also listened to the "Let My People Think" podcast recorded and distributed by Zacharias and RZIM since approximately 2014 or 2015, and she discussed Zacharias's preaching and stated mission with her husband just as she did with the radio programming. Elizabeth Nelson heard many episodes of this podcast, including an episode dated September 23, 2017, entitled "Growing Through Our Disciplines, Part 1." This episode begins with Zacharias asking for contributions, stating the following:

> Please ask the Lord what He would have you do. And may God guide you, and you respond, and we will finish the task together. It's a troubled world; it's a world with a lot of pain. The healing message of Jesus Christ is the only hope. Please help us to get it to every man and woman and child. God Bless you.[18]

32.     In the October 28, 2017 episode of the podcast, entitled "The Quest for Meaning, Part 2 of 2," Elizabeth Nelson heard Zacharias state the following:

---

[18] Ravi Zacharias, *Growing Through Our Disciplines, Part 1 of 2*, RZIM: LET MY PEOPLE THINK BROADCASTS, 00:56–01:16, (Sept. 23, 2017), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/growing-through-our-discipline-21138721.

14

> Your life is sacred; my life is sacred. We cannot have a theocracy, but we must understand that there are laws given by God to protect the sacredness of all that needs to be given to you and to me as a privilege of which to live. The absoluteness of the moral law and the supremacy of love.[19]

33.     In the November 15, 2017 episode of the "Just Thinking" podcast, entitled "A Nation in Decay, Part 4 of 4," Elizabeth Nelson recalls hearing an announcer solicit financial contributions:

> The goal of RZIM is to touch both the heart and the intellect of thinkers and influencers in our society. And this is accomplished by combining evangelism and apologetics. We aim to help reach students on college campuses and universities, encourage churches, and answer questions from Christians and skeptics. To find out more about our ministry or to donate, visit our website at RZIM.org.[20]

34.     From 2014 through 2020, the Nelsons received several CDs from RZIM, featuring Zacharias and other speakers. These CDs include the following:

- "Jesus Among Other Gods," dated 1990 and featuring Zacharias;

- "Foundations of Contemporary Discipleship," dated 2013 and

   featuring Zacharias who states, "Cannot worship without sacrifice;

---

[19] Ravi Zacharias, *The Quest for Meaning, Part 2 of 2*, RZIM: LET MY PEOPLE THINK BROADCASTS, 00:48–01:10, (Oct. 28, 2017), https://www.podchaser.com/podcasts/rzim-let-my-people-think-broad-216340/episodes/the-quest-for-meaning-part-2-o-22437034.
[20] Ravi Zacharias, *A Nation in Decay, Part 4 of 4*, RZIM: JUST THINKING BROADCASTS, 12:25–12:50, (Nov. 15, 2017), https://www.mixcloud.com/justthinkingbroadcasts/a-nation-in-decay-part-4-of-4/

cannot worship without costing your comfort zone. We must take away from our own comfort[,]" among other things;

- "Ravi talks about his new book *Why Suffering*," dated 2014 and featuring Zacharias who states, "Suffering is necessary; we come out a better person with suffering[,]" among other things;

- "God's Plan for Marriage," dated 2015 and featuring Zacharias;

- "Michigan State Q & A," dated 2017 and featuring Zacharias with Abdu Murray; and

- "The Challenge Against Christianity," dated 2017 and featuring Zacharias.

35.    RZIM sent the Nelsons a "Giving Summary" for each of their financial contributions. In 2019, the RZIM Giving Summary sent to the Nelsons states, "Evangelism is our heartbeat, and armed with apologetics, the RZIM team addresses questions and clarifies truth claims." RZIM further states, "Our outreach is vast. Speaking engagements, podcasts, blogs, YouTube videos, radio broadcasts, and livestreaming events reach countless thousands." RZIM also said, "Training the next generation of Christian believers to help them understand and share the gospel message is critical to our mission as well. Our team trains young believers, Christian laymen and women, and church leaders[.]" In February 2018, three

Giving Summaries sent to the Nelsons state, "Your support enables the entire team here in the States, the United Kingdom and Europe, the Middle East and in Asia to spread the good news of the gospel."

36.     In 2016, the Nelsons jointly gave $1,300 to RZIM, and RZIM sent a Giving Summary which stated that RZIM had moved into its "new home base" or "the global headquarters for RZIM" in Alpharetta, Georgia. This Giving Summary further states, "Your generosity and partnership with us make it possible for us to move into the building debt-free and to effectively proclaim the gospel message where people are listening." After contributing $1,000 in 2014, RZIM sent the Nelsons a Giving Summary, which states, "Thank you for *your* investment in the ministry of RZIM. It is making a significant difference in fulfilling the vision: evangelism undergirded by apologetics that touches both the heart and the intellect of the thinkers and influencers of society." These Giving Summaries affirmed for the Nelsons that they were supporting a righteous and moral Christian organization.

37.     Elizabeth Nelson was also driven by a desire to help women and children subjected to sex trafficking, so the Nelsons directed some of their contributions to Wellspring International ("Wellspring"). Wellspring is a department within RZIM that had a stated mission of being "the humanitarian arm

of RZIM," existing "to empower [donors] to impact the lives of women and children in need around the world."[21]

38.     The Nelsons reasonably relied on Zacharias's and RZIM's uniform messaging that they were dedicated to a mission of Christian apologetics and that contributions made by people like the Nelsons would be used to financially support that mission, as described herein. This uniform messaging led the Nelsons to believe Zacharias and RZIM to be people and an organization spiritually aligned with the Gospel of Jesus Christ and who were completely dedicated to a mission of spreading the Gospel, teaching new apologists, and trying to help people through humanitarian efforts. RZIM's uniform messaging was also material to the Nelsons' decision to contribute money to RZIM, and RZIM was successful in obtaining funds as a result of its fraudulent and deceptive acts or omissions. The Nelsons wanted to help support RZIM's training of new apologists, sending apologists around the world to minister the Gospel and continuing Zacharias's outreach as a Christian apologetic leader.

---

[21] *Wellspring International 2019 Annual Report*, https://s3-us-west-2.amazonaws.com/rzimmedia.rzim.org/assets/downloads/WS+2019+Annual+Report.pdf?utm_campaign=9fd24cd539-EMAIL_CAMPAIGN_2019_01_17_04_17_COPY_01&utm_medium=email&utm_source=WellSpring%20Donors&utm_term=0_8473e4a1a0-9fd24cd539-53540981 (last visited September 20, 2021).

39.     At no point prior to February 2021 did anyone at RZIM inform the Nelsons that contributed funds were also used to further serious sexual misconduct and to cover up that misconduct. The Nelsons would not have provided money to RZIM had they been aware of these facts and of Zacharias's moral failings.

**Zacharias's Sexual Misconduct**

40.     Zacharias, however, was not who he claimed to be. Since at least as far back as October 2014, Zacharias was, in fact, a serial sexual and spiritual predator and a prolific sex offender.

41.     Zacharias was also an investor in two health spas starting in 2004: Touch of Eden and Jivian Wellness.[22] Both were located at the same address in Alpharetta, GA, operating first under the name Touch of Eden, and then as Jivian Wellness when Touch of Eden ceased to exist.[23] Zacharias was well-known to frequent these spas for massage therapy. Nearly two dozen therapists at these spas reported inappropriate, sexual behavior by Zacharias during these massages, including nudity, maintaining an erection, asking therapists to touch his genitals,

---

[22] Lynsey M. Barron & William P. Eiselstein, Miller & Martin PLLC, Report of Independent Investigation into Sexual Misconduct of Ravi Zacharias (Feb. 9, 2021) https://s3-us-west-2.amazonaws.com/rzimmedia.rzim.org/assets/downloads/Report-of-Investigation.pdf, attached hereto as Exhibit 1.
[23] *Id.*

and groping.[24] One witness reported "details of many encounters over a period of years that she described as rape."[25] Like with other sexual abuse survivors, Zacharias provided this witness with financial support, elicited "personal information about a difficult past," and used "religious language during their encounters."[26]

42.     Zacharias would demand sex from women after providing for their financial needs, sometimes using "religious expressions to gain compliance."[27] Zacharias would reference "'godly' men in the Bible with more than one wife," preying on the spiritual faith and vulnerabilities he fostered with women he subjected to sexual abuse, throughout the course of his abuse of them.[28] Zacharias groomed the women he preyed upon, learning about their personal lives, struggles, and vulnerabilities after gaining their trust as their "spiritual guide, confidante, and notable Christian statesman."[29]

43.     In 2017, Lori Anne Thompson ("Thompson") brought allegations of sexual misconduct against Zacharias directly to RZIM leadership and/or Board of

---

[24] *Id*. at 4.
[25] *Id*.
[26] *Id*. at 5.
[27] *Id*.
[28] *Id*.
[29] *Id*. at 5, 7.

Directors, reporting inappropriate communications and interactions to which Zacharias subjected her.[30] Thompson revealed sexually explicit, online conversations she had with Zacharias and Zacharias's requests for indecent photos of her.

44.    Zacharias claimed innocence and threatened to leave RZIM; in turn, RZIM steadfastly defended Zacharias and did not investigate Thompson's allegations.[31] Based on information and belief, RZIM made reckless misrepresentations in defending Zacharias against Thompson's allegations despite having been provided with "a notebook of evidence."[32] RZIM's actions and failure to respond appropriately to reports of Zacharias's sexual misconduct furthered the public deception that Zacharias was a faith-filled, moral, and upstanding Christian leader. RZIM's acts and omissions further allowed Zacharias to continue sexually abusing women under the cover of Christian ministry and permitted Zacharias's ongoing, deceptive fundraising efforts for RZIM.

45.    Plaintiffs made monetary contributions to RZIM in support of its professed Christian apologetic mission during the time of RZIM's continued

---

[30] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021).
[31] *Id.*
[32] *Id.*

defense and support of Zacharias and Zacharias's continued leadership of RZIM.

46.     Zacharias died on May 19, 2020,[33] before additional allegations of prolific sexual misconduct by Zacharias came to light.

47.     *Christianity Today* published an article on September 29, 2020, revealing sexual misconduct allegations by three women.[34]

48.     It was not until after the publication of the September 2020 *Christianity Today* article that RZIM finally enlisted a firm, Miller & Martin PLLC ("M&M"), to investigate the sexual assault allegations and other allegations of sexual misconduct levied against Zacharias. M&M issued a report of its findings ("M&M Report"), and RZIM published that report, on or about February 9, 2021.[35] M&M had the benefit of access to several of Zacharias's mobile phone devices and a laptop to help inform its investigation.[36] Plaintiffs did not learn the truth about Zacharias and his sexual misconduct until after RZIM published the M&M Report.

---

[33] Daniel Silliman, *Ravi Zacharias Dies of Cancer*, CHRISTIANITY TODAY, (May 19, 2020, 7:00 AM), https://www.christianitytoday.com/news/2020/may/ravi-zacharias-death-cancer-rzim-apologist.html.

[34] Daniel Silliman, *Ravi Zacharias's Ministry Investigates Claims of Sexual Misconduct at Spas*, CHRISTIANITY TODAY, (Sept. 29, 2020, 9:50 AM), https://www.christianitytoday.com/news/2020/september/ravi-zacharias-sexual-harassment-rzim-spa-massage-investiga.html.

[35] Exhibit 1 at 1.

[36] *Id*. at 2.

49.     The independent investigation revealed, and the report states, that some women did not come forward with their allegations earlier because they were afraid no one would believe them, especially because Zacharias was such a "prominent Christian leader."[37]

50.     In addition, RZIM funds were funneled to women subjected to Zacharias's sexual misconduct. Zacharias provided money to these survivors, gave them large tips following massages, and showered them with expensive gifts.[38] In one instance, Zacharias paid $40,000 for a sexual abuse survivor's culinary schooling. In addition, Zacharias traveled with a personal massage therapist, whom RZIM paid. "On paper, her job title reflected other responsibilities, but it appears that her primary job was to massage Mr. Zacharias."[39] Monthly financial support was also funneled through Touch of Hope.[40] Touch of Hope was a discretionary fund that RZIM earmarked as a "humanitarian effort," but a significant portion of its wire payments were made to "or for the benefit of" four women who were, at some point, Zacharias's massage therapists.[41]

---

[37] *Id*. at 5.
[38] *Id*.
[39] *Id*.
[40] *Id.*
[41] *Id*.

51.    RZIM acknowledges its "failures in 2017, including [its] failure to commission an independent investigation at that time, allow[ing] tremendous pain to continue[.]"[42] RZIM further acknowledges that it defended Zacharias against accusations of sexual misconduct and that its defense of Zacharias was wrong, caused others to believe his denials of serious accusations because of the trust those people placed in RZIM, and made it more difficult for survivors to come forward with their truthful accounts of assault and harassment.[43]

52.    Zacharias's heinous acts as a sexual predator are diametrically opposed to the morality he espoused in his sermons and other public speaking engagements, are diametrically opposed to the teachings of Christianity, and are abhorred by Christian apologetics, of which he claimed to be a member and spiritual leader. Zacharias was not alone in perpetrating the fraud and deceit of faith-filled Christians. RZIM, itself, has acknowledged that its founder's sexual misconduct and RZIM's initial response to early allegations were not aligned with what RZIM held itself out to be.

---

[42] Open Letter from the International Board of Directors of RZIM on the Investigation of Ravi Zacharias, RZIM, https://www.rzim.org/read/rzim-updates/board-statement (last visited June 30, 2021).
[43] *Id.*

53.     In a recorded statement posted to RZIM's website and later removed, RZIM's CEO Sarah Davis (who is also Zacharias's daughter) states that Zacharias was "not living up to the truth of what God is," and, "[w]hile we were proclaiming a God who loves and values every person, our leader was not living into truth, and to the truth of who God is."[44] Davis addresses survivors of Zacharias's sex abuse, stating, "Each one of you was created by God with purpose, with dignity, and intrinsic value, and any way that you have been treated otherwise is a direct violation of God's purpose for you."[45] Davis also addresses RZIM supporters, acknowledging and apologizing for the "betrayal," and she admits, "We have not represented Christ to [the public]."[46]

## CLASS ACTION ALLEGATIONS

54.     This action is brought, and may properly proceed, as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. This action may also proceed as a class action pursuant to O.C.G.A. §§ 9-11-23(b)(1) and 9-11-23(b)(3).

---

[44] A Word from CEO Sarah Davis, RZIM, https://www.facebook.com/RZIMfb/videos/as-ceo-sarah-davis-shared-in-her-lastupdate-we-have-been-journeying-as-a-minist/305106931332208/ (last visited September 20, 2021.
[45] *Id*.
[46] *Id*.

55.     Plaintiffs bring this action on behalf of a Nationwide Class, defined as follows:

> **All persons in the United States who made contributions of monetary value to Ravi Zacharias and/or the Ravi Zacharias International Ministry from 2004 through February 9, 2021.**

56.     Excluded from the Class are Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definition if discovery and/or further investigation reveal that it should be expanded or otherwise modified.

57.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown to Plaintiffs at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that at least thousands of people have made monetary contributions to Defendants over the class period. As stated above, RZIM's gross receipts totaled more than $26 million in 2014, alone, and RZIM states that it is completely reliant on donor funding.

58. **Predominance**: Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting individual Class Members, and they include, but are not limited to, the following:

a)  Whether Defendants engaged in the conduct alleged herein;

b)  Whether Zacharias engaged in wrongful conduct while he was the spiritual leader of RZIM;

c)  Whether Zacharias was a corporate officer of RZIM while he engaged in the wrongful conduct asserted herein;

d)  Whether Zacharias misused funds donated to RZIM;

e)  Whether and when RZIM knew, or should have known, about Zacharias's wrongful conduct;

f)  Whether RZIM knew or should have known that financial contributions to RZIM were being used to further Zacharias's sexual misconduct;

g)  Whether RZIM knew, or should have known, that its wrongful conduct would cause substantial harm to Plaintiffs and Class Members;

h)  Whether RZIM derived a benefit from any of Zacharias's wrongful

conduct;

i)  Whether RZIM acquiesced in any of Zacharias's wrongful

conduct;

j)  Whether RZIM failed to investigate reports of Zacharias's

wrongful conduct;

k)  Whether Defendants engaged in unfair or deceptive business

practices as asserted herein;

l)  Whether Defendants' conduct alleged herein violates applicable

statutes and other laws asserted herein;

m) Whether Defendants have been unjustly enriched as a result of the

wrongful conduct asserted herein;

n)  Whether Plaintiffs and Class Members suffered an ascertainable

loss as a result of Defendants' wrongful conduct;

o)  Whether Plaintiffs and Class Members are entitled to damages as a

result of Defendants' wrongful conduct, and if so, the amount and

proper measure of those damages; and

p)  Whether Plaintiffs and Class Members are entitled to equitable

relief, including but not limited to injunctive relief, including

public injunctive relief as provided for pursuant to Georgia law.

59. **Typicality:** Plaintiffs' claims are typical of the claims of the Class, as Plaintiffs made a financial contribution to Defendants while funds were being used for purposes completely unrelated to Defendants' stated mission and purpose and while Defendants held themselves out to be proper Christians holding and living Christian values, as did each member of the Class. Plaintiffs and Class Members were injured in the same manner by Defendants' uniform course of conduct alleged herein. Plaintiffs and Class Members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief give rise to the claims of all Class Members. Plaintiffs and Class Members sustained monetary and economic injuries, including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in taking Plaintiffs' and Class Members' monies under the guise of being a Christian apologetic ministry completely dedicated to "evangelism, apologetics, spiritual disciplines, training, and humanitarian support." Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

60. **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests align with and do not conflict with the interests of the Class they seek to represent. Plaintiffs have retained counsel competent and highly

experienced in complex class action litigation—including consumer protection class action cases—and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

61.   **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of Plaintiffs' and Class members' claims. The injury that each, individual Class member has suffered is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation that Defendants' conduct necessitates. It would be virtually impossible for members of the Class to redress, individually and effectively, the wrongs Defendants have done to them. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, given the complex legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Class Members can be readily ascertained and notified.

62.     Defendants have acted, and refuse to act, on grounds generally applicable to the Class, thereby making final equitable and injunctive relief appropriate with respect to the putative Class as a whole.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Georgia Charitable Solicitations Act, O.C.G.A. §§ 43-17-1, *et seq*.**

**(On Behalf of Plaintiffs and the Class)**

63.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 62 of this complaint as though fully set forth herein.

64.     RZIM is a "Charitable Organization" within the meaning of the Georgia Charitable Solicitations Act.

65.     Based on information and belief, Zacharias was a bona fide officer and employee of RZIM.

66.     Defendants engage in the "solicitation of funds" to the public within the meaning of the Georgia Charitable Solicitations Act.

67.     Defendants directly, or indirectly, operated a scheme to deceive the public to solicit funds for their personal and business purposes. Defendants knowingly and intentionally engaged in these fraudulent and deceptive practices.

68.     Defendants operated a fraud and deceit on Plaintiffs, the putative Class, and the public, with each acting to hide the true nature of RZIM and its leader, Zacharias. Defendants affirmatively misrepresented that funds contributed to RZIM were to support its purported mission of Christian evangelism, apologetic defense of Christianity, and humanitarian efforts, when such funds were in fact used to support and hide Zacharias's sexual abuse. Defendants further misrepresented that they were faith-filled Christians of upstanding moral character. Thus, Defendants' misleading solicitations constitute deceptive acts and practices.

69.     Defendants' uniform deceptive practices were fundamental to their business model because the public, including Plaintiffs and Class Members, would not contribute money to an organization led by a sexual predator that spends funds solicited for non-profit, Christian apologetics purposes instead to perpetrate and provide cover for sex abuse. Plaintiffs and Class Members would not have contributed money to Defendants had they known the truth about Zacharias's sexual misconduct and the improper use of donated funds.

70.     O.C.G.A. § 43-17-12(d) makes it:

[U]nlawful for any person in connection with the planning, conduct, or execution of any charitable solicitation or charitable sales promotion, directly or indirectly:

(1) To employ a device, scheme, or artifice to defraud;

32

 (2) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person;

 (3) To misrepresent or mislead anyone in any manner to believe that the person on whose behalf a solicitation or charitable sales promotion is being conducted is a charitable organization or that the proceeds of such solicitation or charitable sales promotion will be used for charitable purposes if such is not the fact; or

 (4) To misappropriate, convert, illegally withhold, or fail to account for any charitable contributions solicited by, or on behalf of, any charitable organization . . . .

71. Further, per O.C.G.A. § 43-17-14(a):

> Any person who suffers injury or damages as a result of acts or practices in violation of this chapter may bring an action against the charitable organization or paid solicitor engaged in such acts or practices. The person may recover such general damages sustained as a result of such acts or practices. Exemplary damages and attorney's fees may be awarded in cases of intentional violations of this chapter.

72. And "[a]ny person entitled to bring an action under this chapter may institute a class action . . . for the recovery of damages. O.C.G.A. § 43-17-14(b).

73. Defendants' deceptive acts and practices occurred in their trade or business and have proximately caused injury to Plaintiffs and Class Members. Defendants' solicitations are "deemed to be a consumer act or practice or consumer transaction under . . . [Georgia's] Fair Business Practices Act . . . ." O.C.G.A. § 43-17-19.

74.     Defendants' general course of conduct is injurious to the public interest. Defendants' acts are ongoing as Defendants continue to spend money received through their deceptive practices, meaning that the harmful effects of Defendants' acts and/or omissions are repeated, widespread, and expected to last for years into the future.

75.     By their acts and/or omissions as alleged herein, Defendants are forcing Plaintiffs to institute this action.

76.     As a direct, proximate, and legal result of Defendants' fraudulent, deceptive, and unfair acts and practices, Plaintiffs and Class Members have been, and continue to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to the value of their monetary contributions, and other fees, expenses, and costs to be proven at trial.

77.     Plaintiffs have also sustained other economic losses as a direct, proximate, and legal result of Defendants' conduct, in an amount to be proven at trial.

78.     Accordingly, Plaintiffs, on behalf of themselves and Class Members, seek to enjoin Defendants' unfair and/or deceptive acts or practices and recover general damages in an amount to be proven at trial, together with the costs of bringing this suit, including reasonable attorney fees.

34

## COUNT II

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

79.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1

through 62 of this complaint as though fully set forth herein.

80.     Defendants received payments in the form of charitable contributions

from Plaintiffs and Class Members, having induced them to fund Defendants'

purported Christian apologetic evangelism, training, and humanitarian efforts.

Defendants failed to use the funds for these purposes, diverting funds to massage

parlors and as financial support to survivors of Zacharias's sex abuse.

81.     Plaintiffs and Class Members conferred financial benefits on

Defendants that they would not have provided had Defendants truthfully

represented that they were engaged in heinous, wrongful conduct and would use

those financial benefits for their own, wrongful purposes, including in the

furtherance of, and to hide, Zacharias's sexual misconduct.

82.     Defendants retained and continue to retain the benefit of payments

made by Plaintiffs and Class Members under circumstances which render that

retention inequitable and unjust without paying for their value. Under these

circumstances, it would be against equity and good conscience to permit

Defendants to retain the ill-gotten benefits they received from Plaintiffs and Class Members.

83.     Defendants have knowledge of said benefits.

84.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class Members are entitled to restitution, restitutionary disgorgement, and damages, in an amount to be proven at trial.

## COUNT III

**Violation of the Fair Business Practices Act, Ga. Code §§ 10-1-390, *et seq.***

**(On Behalf of Plaintiffs and the Class)**

85.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 62 of this complaint as though fully set forth herein.

86.     Plaintiffs and Class Members are "consumers" within the meaning of the Fair Business Practices Act.

87.     Defendants directly, or indirectly, operated a scheme to deceive the public to solicit funds for their personal and business purposes. Defendants knowingly and intentionally engaged in these deceptive practices.

88.     Defendants operated a fraud on the public with each acting to hide the true nature of RZIM and RZIM's leader, Zacharias. Defendants affirmatively misrepresented that funds contributed to RZIM are used to support its purported

36

mission of Christian evangelism, apologetic defense of Christianity, and humanitarian efforts, constituting deceptive acts and practices. Defendants further misrepresented that they were faith-filled Christians of upstanding moral character.

89.    Defendants' deceptive practices were fundamental to their business model and material because the public, including Plaintiffs and Class Members, would not have contributed money to an organization led by a sexual predator and which would spend funds to perpetrate and provide cover for sex abuse. Plaintiffs and Class Members would not have provided financial support to Defendants had they known the truth about Zacharias's sexual misconduct and the improper use of contributed funds.

90.    Plaintiffs and Class Members had no way of discerning that Defendants' misrepresentations were false and misleading or of otherwise learning that Defendants concealed or failed to disclose Zacharias's sexual misconduct and Defendants' improper use of funds.

91.    Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair and deceptive practices in the course of their business. Defendants, specifically, owed a duty to disclose all material facts concerning the sex abuse perpetrated by Zacharias and the use of contributed funds because Defendants possessed exclusive knowledge of those facts and intentionally

37

concealed them from Plaintiffs and Class Members, and/or made deceptive and misleading statements contradicted by withheld facts.

92.   Plaintiffs and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

93.   Defendants' deceitful and wrongful acts and practices complained of herein present a continuing risk to Plaintiffs and Class Members, as well as to the general public.

94.   On August 5, 2021, Plaintiffs sent notices to Defendants in compliance with Ga. Code § 10-1-399(b). Defendants have not responded to those notices.

95.   Accordingly, Plaintiffs, on behalf of themselves and Class Members, seek to enjoin Defendants' unfair and/or deceptive acts or practices and recover general damages in an amount to be proven at trial, together with the costs of bringing this suit, including reasonable attorney fees.

**PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and the Class Members, respectfully request the following and pray for judgment as follows:

1.      Certification of this case as a class action on behalf of Plaintiffs and the Class as defined above, appointment of Plaintiffs as representatives of the Class, and appointment of the undersigned attorneys as Class Counsel;

2.      A declaration that Defendants misrepresented the true nature of their ministry and the use of funds contributed in support of their stated purpose;

3.      For appropriate declaratory relief;

4.      For appropriate injunctive relief;

5.      For general, compensatory damages, according to proof;

6.      For special and consequential damages;

7.      For civil penalties, according to law;

8.      For prejudgment and post-judgment interest, as allowed by law;

9.      For attorney fees, witness fees, and costs of litigation Plaintiffs incur, according to proof;

10.    For punitive and exemplary damages, where applicable, according to proof to be determined at trial;

11.    For costs of suit herein; and

12.     For such other and further relief as the Court may deem proper and

just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

Dated: September 22, 2021

By:    /s/ *Graham B. LippSmith*
Graham LippSmith
California Bar No. 221984
*Admitted Pro Hac Vice*
MaryBeth LippSmith
California Bar No. 223573
*Admitted Pro Hac Vice*
Jaclyn L. Anderson
California Bar No. 258609
*Admitted Pro Hac Vice*
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
g@lippsmith.com
mb@lippsmith.com
jla@lippsmith.com

Michael McGlamry
Georgia Bar No. 492515
**POPE MCGLAMRY, PC**
3391 Peachtree Road, Suite 300
PO Box 19337 (31126-1337)
Atlanta, GA 30326
Telephone: (404) 523-7706
Facsimile: (404) 524-1648
mmcglamry@pmkm.com

Brad R. Sohn
Florida Bar No. 98788
*Admitted Pro Hac Vice*
**THE BRAD SOHN LAW FIRM, PLLC**
1600 Ponce De Leon Blvd.
Suite 1205
Coral Gables, FL 33134
Telephone: (786) 708-9750
Facsimile: (305) 397-0650
brad@bradsohnlaw.com

Andrew S. Ashby
Georgia Bar No. 455020
Maxwell K. Thelen
Georgia Bar No. 311404
Seth A. Lowry
Georgia Bar No. 867568
ASHBY | THELEN | LOWRY
445 Franklin Gateway SE
Marietta, GA 30067
Telephone: (404) 777-7771
Facsimile: (404) 777-7772
drew@atllaw.com
max@atllaw.com
seth@atllaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2021, I electronically filed the

foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk

of Court using the CM/ECF system, which will automatically send email

notification of such filing to all attorneys of record, according to the Court's

Electronic Mail Notice List.

*/s/ Graham B. LippSmith*    
Graham B. LippSmith
California Bar No. 221984
*Admitted Pro Hac Vice*
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 344-1820
Facsimile: (213) 513-2495
g@lippsmith.com

*Attorney for Plaintiffs*

42