IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEREK CARRIER, et al.,

    Plaintiffs,

       v.

RAVI ZACHARIAS INTERNATIONAL
MINISTRIES, INC.
a Georgia Domestic Non-Profit
Corporation, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-3161-TWT

### OPINION AND ORDER

    This is an action involving alleged charity fraud. It is before the Court on the parties' Joint Request for Scheduling Conference [Doc. 56], Defendants Ravi Zacharias International Ministries, Inc. and RZIM Productions, Inc.'s Motion to Strike Class Allegations [Doc. 59], the Plaintiffs' Motion for Entry of Plaintiffs' Proposed Stipulated Agreement Regarding Discovery of Electronically Stored Information [Doc. 62], the Plaintiffs' Motion For a Ruling on the Parties' Joint Report Re Local Rule 23.1(C) Concerning Communication with Actual or Putative Class Members [Doc. 63], and the Plaintiffs' Motion for Entry of Plaintiffs' Stipulated Protective Order [Doc. 64]. For the reasons set forth below, the parties' Joint Request for Scheduling Conference [Doc. 56] is DENIED as moot; Defendants Ravi Zacharias International Ministries, Inc. and RZIM Productions, Inc.'s Motion to Strike Class Allegations [Doc. 59] is GRANTED; the Plaintiffs' Motion For a Ruling on the Parties' Joint Report Re

Local Rule 23.1(C) Concerning Communication with Actual or Putative Class Members [Doc. 63] is DENIED as moot; and the Plaintiffs' Motion for Entry of Plaintiffs' Proposed Stipulated Agreement Regarding Discovery of Electronically Stored Information [Doc. 62] and the Plaintiffs' Motion for Entry of Plaintiffs' Stipulated Protective Order [Doc. 64] are DENIED without prejudice.

## I.   Background

The facts of this case, as alleged in the First Amended Complaint, were detailed in the Court's May 13, 2022 order granting in part and denying in part the Defendants' motions to dismiss. *See Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, 2022 WL 1540206, at *1-3 (N.D. Ga. May 13, 2022). The Plaintiffs assert their two remaining claims—for unjust enrichment and violation of Georgia's Fair Business Practices Act (the "FBPA")—on behalf of a nationwide class, defined as: "All persons in the United States who made contributions of monetary value to Ravi Zacharias and/or the Ravi Zacharias International Ministry from 2004 through February 9, 2021" (the "Proposed Class"). (First Am. Compl. ¶ 55.) Now, before discovery begins, Defendants Ravi Zacharias International Ministries, Inc. and RZIM Productions, Inc. (collectively, "RZIM") move to strike the class allegations in the First Amended Complaint. In support, RZIM argues that constitutional and factual hurdles will make it impossible to certify the Proposed Class and that the Plaintiffs must instead pursue their claims in their individual capacities.

## II. Legal Standard

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must "[a]t an early practicable time after a person sues or is sued as a class representative . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). There are four prerequisites to class certification as outlined in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The proposed class must also satisfy at least one of the alternative requirements in Rule 23(b), which for purposes of this case are found in subsections (b)(2) and (b)(3). *See Herrera v. JFK Med. Ctr. L.P.*, 648 F. App'x 930, 933 (11th Cir. 2016). For a plaintiff to invoke subsection (b)(2), the party opposing class certification must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Subsection (b)(3), meanwhile, applies when "[1] the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [when] [2] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

Generally, a court does not engage in this inquiry until it is presented with the plaintiff's motion for class certification. In exceptional cases, though, striking or dismissing class allegations is allowed when "a defendant demonstrates from the face of the complaint that it will be impossible to certify the class[] alleged by the plaintiff regardless of the facts the plaintiff may be able to prove."[1] *Oginski v. Paragon Props. of Costa Rica, LLC*, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011) (citation and alterations omitted); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("In some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings."). After all, Rule 23(d)(1)(D) specifically allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons[.]" Fed. R. Civ. P. 23(d)(1)(D). This is considered an extreme remedy in the Eleventh Circuit. *See Oginski*, 2011 WL 3489541, at *3. Because class certification is an evidentiary matter, "the determination usually should be predicated on more information than the complaint itself affords." *Herrera*, 648 F. App'x at 933-36. Oftentimes, "the

---

[1] The Plaintiffs argue that the Motion to Strike, although brought under Rule 23(d)(1)(D), should be viewed through the lens of Rule 12(f). (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 3.) Under Rule 12(f), a court may strike an allegation from a pleading only if it is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). But whether Rule 23(d)(1)(D) or Rule 12(f) applies, the Plaintiffs and RZIM appear to agree on the relevant standard: that is, the central question for the Court is whether any fatal defects in the class allegations are plain on the face of the complaint. (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 3-4 (citing *Oginski*, 2011 WL 3489541, at *3).) Absent clear contrary guidance from the Eleventh Circuit, this is the standard that the Court will apply to the Motion to Strike.

district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills*, 511 F.3d at 1309.

### III. Discussion

#### A. Timeliness of the Motion to Strike

At the outset, the Plaintiffs argue that the Motion to Strike should be denied because it is procedurally improper and untimely under Rule 12(g)(2). (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 5.) Rule 12(g)(2) states: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). A motion to strike is among the motions permitted by Rule 12—specifically Rule 12(f). Fed. R. Civ. P. 12(f). Because RZIM already moved to dismiss this case under Rule 12(b), the argument goes, it is now barred from separately moving to strike class allegations under Rule 12(f). (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 5.)

The trouble for the Plaintiffs is that RZIM cites Rule 23(d)(1)(D), not Rule 12(f), as the basis for the Motion to Strike. As noted above, Rule 23(d)(1)(D) vests courts with independent authority to strike or dismiss class allegations. (Def.'s Mot. to Strike, at 1-2.) *See Pettis v. Empire Educ. Grp., Inc.*, 2019 WL 13215356, at *1 & n.7 (N.D. Ga. June 11, 2019) (noting that "[s]ome district courts in this Circuit have proceeded with the understanding that Rule

23(d)(1)(D) provides independent grounds for striking class allegations"); *Goff v. LaSalle Bank, N.A.*, 2009 WL 10688475, at *2-3 (N.D. Ala. Sept. 16, 2009) (distinguishing motions to strike brought under Rule 23(d)(1)(D) from those brought under Rule 12(f)). "Several federal courts have entertained Rule 23(d) motions to strike after a Rule 12 motion to dismiss has been filed." *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2012 WL 6208385, at *3-4 (N.D. Tex. Dec. 13, 2012) (collecting cases). This Court will do the same.

### B. The First and Fourteenth Amendments and the Religious Freedom Restoration Act

The Court turns now to RZIM's arguments for striking the class allegations in the First Amended Complaint. First, RZIM contends that certification of the Proposed Class would violate the First Amendment, the Fourteenth Amendment, and the Religious Freedom Restoration Act (the "RFRA"). (Defs.' Br. in Supp. of Defs.' Mot. to Strike, at 12-13.) Because the Court would have to compel disclosure of RZIM's donors to ascertain the Proposed Class, RZIM asserts that a class action would infringe on those donors' constitutional and statutory rights to freely associate and engage in religious expression. (*Id.*)

#### 1. Constitutional Right of Association

The First Amendment prohibits the government from making laws "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of

grievances." U.S. Const. amend. I. As the Supreme Court has long recognized, "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). The rationale for the right to associate is that "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Id.* According to RZIM, the Due Process Clause of the Fourteenth Amendment likewise assures the "freedom to engage in association for the advancement of beliefs and ideas," no matter whether those beliefs "pertain to political, economic, religious, or cultural matters[.]" (Defs.' Br. in Supp. of Defs.' Mot. to Strike, at 7 (quoting *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958)).)

Government intrusion on this freedom can take a number of forms. Relevant here, there is a "vital relationship between freedom to associate and privacy in one's associations"; for that reason, compelled disclosure of a group's members or donors "may constitute as effective a restraint on freedom of association as [other] forms of governmental action[.]" *NAACP*, 357 U.S. at 462. The Supreme Court's decision in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), is instructive. There, the California Attorney General imposed a rule that all charities must disclose their major donors

when renewing their annual registrations with the state. *See Ams. for Prosperity*, 141 S. Ct. at 2380. Two charities sued, and the Supreme Court found the rule to be facially unconstitutional. *See id.* at 2385. The Court reiterated that in First Amendment challenges to compelled disclosure, "exacting scrutiny" is the applicable standard of review. *See id.* at 2383. "Under that standard, there must be a substantial relation between the disclosure requirement and a sufficiently important governmental interest. To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* (quotation marks and citations omitted). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." *Id.*

In striking down the Attorney General's disclosure rule, the Court acknowledged that California has an important interest in preventing wrongdoing by charities and protecting the public from fraud. *See id.* at 2385-86. However, the Court perceived a "dramatic mismatch" between the interest that the Attorney General sought to promote and the disclosure requirement that he implemented toward that end. *Id.* With 60,000 charities renewing their registrations each year, the need for California to collect so much sensitive donor information was dubious given that the information would become relevant in so few cases. *See id.* at 2386-87. Also, the record showed that the

Attorney General did not rely on up-front donor collection to initiate investigations and had not considered alternative, more tailored means to obtain the same information, such as subpoenas or audit letters. *See id.* In reality, the Court found, "California's interest [was] less in investigating fraud and more in ease of administration." *Id.* at 2387. But mere administrative convenience did not match the seriousness of the burden that the disclosure rule imposed on donors' associational rights. *See id.* The Court thus concluded that the disclosure requirement "create[d] an unnecessary risk of chilling" in violation of the First Amendment. *Id* at 2388.

RZIM argues that the First Amendment protects against compelled disclosure even between private parties engaged in discovery. (Defs.' Br in Supp. of Defs.' Mot. to Strike, at 8-9.) The Supreme Court's *NAACP* decision bears out this point. There, the Court reasoned that "[i]t is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize." *NAACP*, 357 U.S. at 463. Following *NAACP*, courts have consistently recognized a qualified associational privilege in the discovery context. *See, e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (finding, in a case with private litigants, that "the magistrate's order compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny"); *Anderson v. Hale*, 2001 WL 503045, at *3 (N.D. Ill. May 10, 2001) ("This same

balancing test [for the government to overcome the associational privilege] equally applies to cases involving two private parties."); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315, at *9 n.16 (S.D.N.Y. Feb. 28, 1985) ("[C]ourts have consistently applied the right of associational privacy to compelled disclosure through discovery.").

Applying exacting scrutiny here, it is clear that the Court must require RZIM to disclose the identities of its donors in order to certify the class defined in the First Amended Complaint. The Proposed Class is defined as: "All persons in the United States who made contributions of monetary value to Ravi Zacharias and/or the Ravi Zacharias International Ministry from 2004 through February 9, 2021." (First Am. Compl. ¶ 55). It is impossible to certify such a class without compelling RZIM to disclose its donor lists. Compelled disclosure of RZIM's donor lists and identification of the donors as financial supporters of a "sexual predator" would have an impermissible chilling effect upon their First Amendment rights to associate with RZIM and other likeminded religious believers. True, as the Plaintiffs emphasize, the Supreme Court in *Americans for Prosperity* recognized an important governmental interest in protecting the public from fraud. (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 8.) But the Plaintiffs are bringing this case under a statute, the FBPA, that expressly prohibits actions brought "in a representative capacity[.]" O.C.G.A. § 10-1-399(a). Although this prohibition may not control in federal court, *see Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir.

2015), it certainly undermines the claim that the government has an interest in redressing this alleged fraud through class litigation. Accordingly, the Plaintiffs have made no showing that the government has a substantial interest in this action going forward as a class action. Any governmental interest in preventing fraud may be achieved by the individual Plaintiffs proceeding as a non-class action.

### 2. The RFRA

Enacted in 1993, the RFRA prohibits the federal government from "substantially burden[ing] a person's exercise of religion, 'even if the burden results from a rule of general applicability.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(a)). Governmental action is exempt from the statute, though, if it meets the compelling interest test; that is, if the government can demonstrate that "[the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* (quoting 42 U.S.C. § 2000bb-1(b)). A person whose religious exercise has been burdened in violation of the RFRA "may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).

According to RZIM, the non-consensual disclosure of its donor lists constitutes an impermissible burden on religion under the RFRA. (Defs.' Br. in

Supp. of Defs.' Mot. to Strike, at 8.) However, the weight of authorities holds that the RFRA does not apply in cases where, as here, the government is not a party. In *Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015), the Seventh Circuit emphasized that the RFRA establishes a burden-shifting framework in which *the government* must make a showing after the plaintiff demonstrates a substantial burden on religious exercise. *See also Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008). A private party, the court held, "cannot step into the shoes of the 'government' and demonstrate a compelling governmental interest and that it is the least restrictive means of furthering that compelling governmental interest because the statute explicitly says that the 'government' must make this showing." *Listecki*, 780 F.3d at 736. The Seventh Circuit also noted that the statute authorizes judicial relief only against a government, meaning there can be no relief if the government is not a party. *Id.* at 736-37. Two other circuit courts of appeals have come to the same conclusion. *See Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410-12 (6th Cir. 2010); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 834, 837-43 (9th Cir. 1999). And a third, the Second Circuit, has walked back its holding that the RFRA can operate against private parties in limited circumstances (which are not present here). *Compare Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006), *with Rweyemamu*, 520 F.3d at 203-04 & n.2. Therefore, the Court concludes that RZIM cannot invoke the RFRA to avoid this class action brought by private plaintiffs.

### C. Rule 23 Class Certification Requirements

Next, RZIM argues that the Plaintiffs' claims cannot fulfill the requirements for class certification under Rule 23. (Defs.' Br. in Supp. of Defs.' Mot. to Strike, at 14-24.) Generally speaking, RZIM's position is that individual donors contributed to different departments within RZIM for different reasons after drawing their own personal impressions about the organization from numerous potential sources. (*E.g.*, *id.* at 21-22.) Further, as pled in the First Amended Complaint, RZIM did not use all donors' (and thus all class members') contributions for improper purposes. (Reply Br. in Supp. of Defs.' Mot. to Strike, at 9-10 (citing First Am. Compl. ¶¶ 25-27, 30-34).) These individualized circumstances, RZIM predicts, will require individualized inquiries as to liability and damages, which are inappropriate for class treatment. (Defs.' Br. in Supp. of Defs.' Mot. to Strike, at 22-23.) RZIM also renews its constitutional objections concerning the compelled disclosure of donors and questioning donors about their religious beliefs and motivations. (*Id.* at 15-16.)

In response, the Plaintiffs argue that the lack of discovery in this case prevents a rigorous Rule 23 analysis. (Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 11.) Indeed, many district courts in the Eleventh Circuit, including this one, have denied motions to strike class allegations as premature at the pleading stage. *See, e.g.*, *Sharfman v. Premier Med., Inc.*, 2021 WL 6884683, at *4 (M.D. Fla. Dec. 29, 2021) ("[T]he issue of whether claims deserve class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike."

(quotation marks, citation, and alteration omitted)); *Mayfield v. Ace Am. Ins. Co.*, 2020 WL 12029099, at *7 (N.D. Ga. Mar. 19, 2020) ("[T]he class allegations are best tested under Rule 23 on a motion for class certification after the collection and presentation of evidence."); *Pettis*, 2019 WL 13215356, at *3; *Chaney v. Crystal Beach Cap., LLC*, 2011 WL 17639, at *2 (M.D. Fla. Jan. 4, 2011) ("The shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form." (citation and alteration omitted)). The Court turns its attention first to the alternative requirements for class certification found in Rule 23(b).

1. Rule 23(b)(3)

Subsection (b)(3) of Rule 23 allows class certification when "the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [when] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). The rule sets forth four specific, although non-exclusive, considerations pertinent to these findings:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* Arguably, the Plaintiffs should be entitled to some discovery before the Court addresses the predominance requirement. However, whether the Plaintiffs can meet the superiority hurdle can be addressed from the pleadings.

In theory, a class could be certified that seeks an award of damages equal to all of the hundreds of millions of dollars contributed over the 16-year class period from 2004 through February 9, 2021. But the Plaintiffs admit that RZIM used the contributions of the Proposed Class to support a mission of spreading the Gospel, teaching new apologists, and trying to help people through humanitarian efforts. None of the donors were actually harmed by their contributions to RZIM, and it appears from the face of the First Amended Complaint that only a very small amount of the money contributed to RZIM was actually used to facilitate or cover up the sexual misconduct of Zacharias. Therefore, a class-wide damages award (even if possible) of all contributions would be inequitable and implausible. After that, what? It is impossible to say. The Plaintiffs have proposed no method—whether "some formula, statistical analysis, or other easy or essentially mechanical method"—to differentiate the class members whose donations were misappropriated from those whose donations were not. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Faced with such a fact-intensive, individualized inquiry (and with no apparent solution), any attempt to fashion a class-wide damages award in this case will prove unmanageable. Accordingly, given the Plaintiffs' class definition, the Court is not persuaded that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

2. Rule 23(b)(2)

RZIM also argues that the Proposed Class cannot be certified under subsection (b)(2) of Rule 23. (Defs.' Br. in Supp. of Defs.' Mot. to Strike, at 24.) Rule 23(b)(2) applies where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), the Supreme Court held that claims for monetary relief are excluded from Rule 23(b)(2) when "the monetary relief is not incidental to the injunctive or declaratory relief," or when "each class member would be entitled to an individualized award of monetary damages." *Id.* at 361. Here, the Plaintiffs primarily request monetary damages, including the value of their donations, special and consequential damages, civil penalties, punitive and exemplary damages, and litigation expenses. (First Am. Compl. ¶¶ 84, 92, 95 & at 39.) Any injunctive or declaratory relief sought by the Plaintiffs is incidental to this monetary relief, not the other way around. (*E.g.*, Pls.' Br. in Opp'n to Defs.' Mot. to Strike, at 25 (predicting that the Plaintiffs "may need to seek an order enjoining RZIM from wasting its assets during this litigation").) While the Plaintiffs also ask the Court to enjoin the Defendants' "unfair and/or deceptive acts or practices," Zacharias died on May 19, 2020. (First Am. Compl. ¶¶ 46, 78.) After that, RZIM commissioned an independent investigation of his misconduct and admitted wrongdoing; the results of that investigation have been well-publicized in the Christian community. (*Id.* ¶¶ 48-53.) As pled, there is no further deceptive behavior by

RZIM that would warrant injunctive relief. Thus, the Plaintiffs' Rule 23(b)(2) allegations should be struck from the First Amended Complaint. Because the Proposed Class cannot satisfy any of the requirements in Rule 23(b), the Court concludes that this case is not amenable to class certification.

## IV.   Conclusion

For the foregoing reasons, Defendants Ravi Zacharias International Ministries, Inc. and RZIM Productions, Inc.'s Motion to Strike Class Allegations [Doc. 59] is GRANTED. The class allegations of the First Amended Complaint are DISMISSED. The Defendants have 30 days from the date of this Order to file their Answers, and discovery will begin pursuant to Local Rule 26.2(A). The parties' Joint Request for Scheduling Conference [Doc. 56] is DENIED as moot. The Plaintiffs' Motion for Entry of Plaintiffs' Proposed Stipulated Agreement Regarding Discovery of Electronically Stored Information [Doc. 62] and the Plaintiffs' Motion for Entry of Plaintiffs' Stipulated Protective Order [Doc. 64] are DENIED without prejudice. The parties are DIRECTED to negotiate in good faith in a further attempt to reach agreement on the subject matter of the motions. The Plaintiffs' Motion for a Ruling on the Parties' Joint Report Re Local Rule 23.1(C) Concerning Communication with Actual or Putative Class Members [Doc. 63] is DENIED as moot.

SO ORDERED, this   3rd   day of March, 2023.

                                                       THOMAS W. THRASH, JR.
                                                       United States District Judge